ROSIE C. GRAY v. SOVEREIGN CAMP, WOODMEN OF THE WORLD.

Decided November 23, 1907.

**1.—Insurance—Beneficiary Certificate—Nullity—Fraud.**

Where the constitution and by-laws of a benefit society specify the classes of persons in whose favor the beneficiary certificate might be issued, and a member of such society by false and fraudulent representations that the beneficiary named by him came within one of the classes specified, procures the certificate to issue in favor of such person, the certificate is a nullity, and the society will not be bound thereby.

**2.—Same—Benefit Society—Beneficiaries—Statute.**

The statute of this State (General Laws, 1899, page 195) defines fraternal beneficiary societies and designates the classes of persons who can receive benefits from them, and benefit societies have no power or authority to issue beneficiary certificates to any other than the classes named.

**3.—Same—Change of Beneficiary.**

Where the laws of a benefit society provide a method for changing the

beneficiary, that method is exclusive and must be complied with. Attempted change, not in conformity with the laws of a society, considered, and held ineffectual.

#### 4.—Insurable Interest—False Representation.

Under the Act of 1899 a cousin, being a blood relative, has an insurable interest in the life of a member of a fraternal benefit society, and hence a false representation by such member that the beneficiary was his cousin was such a material misrepresentation as would avoid the contract of insurance.

#### 5.—Same.

Where one named as a beneficiary in a benefit society was not included in any of the classes designated in the constitution and by-laws of said society, nor in the statutes of this State, the fact that such person afterwards became the common law wife of the member would not entitle her to the benefit.

Appeal from the District Court of Bowie County. Tried below before Hon. P. A. Turner.

*Smelser & Vaughan,* for appellant.—It is against the public policy in this State as announced in our laws and the decisions of our courts, for policies of insurance, under whatever name, to be issued in favor of any person as beneficiary, promising benefits to such beneficiary upon the death of another, in whose life such beneficiary has no insurable interest; and it is also against public policy in this State, as announced in our laws and the decisions of our courts, for any insurance order of any kind, whether organized for profit or fraternal and beneficiary, to issue a void policy or certificate upon the life of any person, payable at the death of such person to a beneficiary having no insurable interest in the life of the insured; and as incident to this, it is against public policy in this State to permit an insurance order of any kind, whether organized for profit or fraternal and beneficiary, which has issued a policy or certificate in favor of a beneficiary having no insurable interest, to defeat a recovery by the legal representatives or heirs or widow of the assured. The defendant was bound under the law to know the relationship between the assured and the beneficiary, and the law made it its duty to know, and not to issue a policy or certificate until it did know; public policy forbade it to do so. Having issued the certificate in favor of a beneficiary, to whom it was against public policy for it to issue it even if the representation that she was his cousin had been true, it can not avoid the certificate on the ground that it was issued upon the faith of that representation, and the certificate will in law and under the rules of the order, the by-laws of the defendant, inure to the benefit of the wife of the insured, and this is none the less true, when, as in this case, at the death of the assured, the person named as beneficiary, is herself the wife.

For the above reasons, by the very terms of the certificate sued on, it was payable under the law and under the constitution and by-laws of the defendant, upon the death of said Murray A. Gray, to his wife, if he had a wife then living, and this, without regard to whether Rosie C. White was his cousin or not. McCorkle v. Texas Benevolent Asso., 71 Texas, 152; Price v. Knights of Honor, 68 Texas,

361; Schonfield v. Turner, 75 Texas, 324; Cheeves v. Anders, 87 Texas, 293; Equitable Ins. Co. v. Hazlewood, 75 Texas, 352; Pacific Mut. Life Ins. Co. v. Williams, 79 Texas, 633; 3 Am. & Eng. Enc. Law, 2d ed., pp. 936-941; Modern Order of Praetorians v. Hollmig, 17 Texas Ct. Rep., 969; Sovereign Camp W. O. W. v. Gray, 64 S. W. Rep., 801.

*Glass, Estes & King,* for appellee.—Where the terms of a fraternal beneficiary certificate recite that the constitution and by-laws are a part of the contract, and said constitution and by-laws mention and designate a class to whom a policy or beneficiary certificate can be made payable, only such persons as are members of the class so named can recover as beneficiaries. 3 Ency. of Law, 2d ed., 960; West v. A. O. U. W., 37 S. W. Rep., 966; Grand Lodge A. O. U. W. v. Bolman, 53 S. W. Rep., 829; Coleman v. Anderson, 86 S. W. Rep., 731; Gillam v. Dale, 76 Pac. Rep., 861; Supreme Council v. Perry, 5 N. E. Rep., 637; Keener v. Grand Lodge, 38 Mo. App., 545; Flowers v. Woodmen of the World, 40 Texas Civ. App., 593; Acts of 1903, sup. to Sayles' Statutes, title 49a.

Untrue representations in an application for insurance in a fraternal order avoids or vitiates a policy that is issued by reason of such representations. Where the constitution and by-laws of the order designate an exclusive class to whom a certificate can be made payable, and the certificate is issued as a result of untrue and fraudulent representations that the beneficiary named therein is within said class, the issuance of such certificate was an act ultra vires, and the certificate itself is void and of no effect. Supreme Council A. L. of H. v. Green, 71 Md., 263; 17 Am. St. Rep., 528; Koerts v. Grand Lodge (Wis.), 97 N. W. Rep., 163; Steele v. Fraternal Tribunes, 215 Ill., 190, 74 N. E. Rep., 121; West v. A. O. U. W. (Tex.), 14 Texas Civ. App., 479; Webb v. Bankers Ins. Co., 76 Pac. Rep., 738; 3 Ency. of Law, 2d ed., 961; Brock v. United Moderns, 36 Texas Civ. App., 12.

In order to constitute a common law marriage there must be a distinct agreement and promise to become, presently, and henceforth husband and wife. If there is something to be done by terms of the agreement before the contract is consummated, or the agreement to become husband and wife is effected, then the marriage is not complete, and cohabitation, under such circumstances, is immoral and unlawful. 1 Bishop on Marriage and Divorce, ed. 1891, p. 144, par 346-47; Cuneo v. DeCuneo, 24 Texas Civ. App., 437; Edelstein v. Brown, 35 Texas Civ. App., 625; Edelstein v. Brown, 95 S. W Rep., 1126; Appeal of Reading Fire Ins. Co., 113 Pa. St., 204, 57 Am. Rep., 448; Voorhees v. Voorhees, 46 N. J. Eq., 411, 19 Am. St. Rep , 405; Simmons v. Simmons, 39 S. W. Rep., 639; Cumby v. Garland, 25 S W. Rep., 676.

TALBOT, ASSOCIATE JUSTICE.—Appellant brought this suit against the appellee to recover the sum of $3,000 upon a beneficiary certificate issued by appellee October 11, 1901, upon the life of Murray A. Gray, in favor of appellant, under the name of Rosie C. White, and as the cousin of the said Murray A. Gray. The petition alleged the death of Murray A. Gray, proof thereof, and that at the date of his death appellant bore to him the relation of wife, and otherwise upon its face showed a cause of action. The defendant pleaded a general denial and specially, among other things, that under its constitution and laws, benefit certificates can only issue in favor of beneficiaries who are the wife, children, adopted children, parents, brothers, sisters, or other blood relations of the member, or to the persons dependent upon the member; that in the application of the said Murray A. Gray for membership in defendant's order he directed that the amount of the beneficiary fund, to which his beneficiary should be entitled at his death, be paid to Rosie C. White, and that he represented in said application that the said Rosie C. White was related to him as cousin; that at the time of the making of said application, and at the time the beneficiary certificate was issued, the officers and agents of appellee believed that Rosie C. White was the said Murray A. Gray's cousin, and had no notice that she was not, until after the death of the said Murray A. Gray; that said Rosie C. White was not at the date of said application, or at any other date, the cousin or any other blood relative of the said Murray A. Gray; that he falsely and fraudulently represented to defendant that said Rosie C. White was related to him as cousin, when in truth and in fact she was not a blood relative of his at all; all of which was well known to the said Murray A. Gray and appellant.

Defendant further alleged that the application of the said Murray A. Gray for membership in its order contained a stipulation and agreement to the effect that if any statement or answer made by the said Gray in said application was untrue, etc., his beneficiary certificate should become void and all rights of any person thereunder should be forfeited. A trial before the court without a jury resulted in a judgment for appellee and appellant has appealed.

The following conclusions of fact, filed by the presiding judge, were authorized by the evidence and are adopted by this court: "The Sovereign Camp, Woodmen of the World, is a fraternal beneficiary association organized and carried on for the sole benefit of its members and the beneficiaries, and not for profit, with a lodge system and ritualistic form of work, with a fund from which benefits are paid, which fund is created for the purpose of paying upon reasonable and satisfactory proof of the death of a beneficiary member who has complied with all the requirements of the order, to the beneficiary or beneficiaries named in such certificate a sum not to exceed three thousand dollars, which beneficiaries shall be the wife, chil-

dren, adopted children, parents, brothers, sisters or other blood relations, or to persons dependent on the member.  On October 3, 1901, Murray A. Gray made application in writing to become a member of the Texarkana Camp No. 19 (same being a subordinate lodge at Texarkana), and to become a participant in the beneficiary fund of the order to the amount of $3,000.  In said application he named Rosie C. White as beneficiary, and represented the relationship of her to himself to be that of cousin.  That said application was in due course forwarded to the Sovereign Camp of the order whose officials, on the strength of representations contained therein, did authorize the issuance of and did issue on October 11, 1901, to the said Murray A. Gray a beneficiary certificate, No. 62733, by the terms of which it was stated that said Gray while in good standing was entitled to participate in the beneficiary fund of the order to the amount of $1,500, should his death occur during the first year of his membership; $2,250, should his death occur during the second year of his membership, and $3,000, should his death occur after the third year of his membership, payable to Rosie C. White, bearing the relationship of cousin to him.  The said Murray A. Gray afterwards, while in good standing as a member of said lodge, and on May 5, 1905, died in the State of California, and the said Rosie C. White did thereafter make proof of his death and a verified claim for the amount of said certificate, in which claim she represented her relationship with Gray to be that of affianced wife.  At the time said application was made and said certificate was issued Murray A. Gray was not in fact the cousin of Rosie C. White and was not in any manner related by blood or marriage to her.  The said representation was at said time false and fraudulent, and the facts were that Rosie C. Gray, known to the public as Zoe Leroy, was at said time an inmate, and for ten or fifteen years prior to said time, had been an inmate of a public house of prostitution, and was living in said house in illicit and immoral cohabitation with him.  At the time said application was made and said certificate issued and until the death of said Gray, the officials of defendant, whose duty it was to decide upon the issuance of certificates and to issue certificates, had no notice or knowledge that the relationship between plaintiff and said Gray was otherwise than as stated in said application and issued said certificate, believing and until his death believed that said plaintiff was in fact his cousin.  That said illicit and immoral cohabitation began before and continued after the issuance of said certificate.  Some time after same had been issued and prior to the 10th day of July, 1904, plaintiff and said Gray contracted a marriage between themselves, which was a valid marriage at common law, but none of the requisites of our statute were complied with, and they continued to live together as husband and wife till the death of said Murray A. Gray.  On the 10th day of July, 1904, the following was endorsed and signed on said policy:

'Change of Beneficiary. I hereby cancel the designation of bene-
ficiary named in within certificate and hereby order that this cer-
tificate shall be payable at my death to Rosie C. Gray, as my bene-
ficiary, who bears relationship to me of wife. Date July 10, 1904.
Murray A. Gray. Attest, Paul J. Reverra, clerk, Camp No. 19,
State of Texas.' Nothing was ever done except this to change the
beneficiary. Rosie C. White and Rosie C. Gray are one and the
same person. The defendant knew nothing of this endorsement
until at the death of Gray. The constitution and by-laws of the
defendant designate, define and restrict the class of beneficiaries
who may participate in the beneficiary fund to the wife, children,
adopted children, parents, brothers, sisters or other blood relations
or to persons dependent upon the member. The constitution and
by-laws of defendant further provide, and the beneficiary certificate
itself recites, that same was issued subject to all the laws, rules
and regulations then in force or that might thereafter be enacted,
and in consideration of the representations, agreements and warran-
ties made by Gray in his application to become a member, and
that if any of the statements or declarations in said application
upon the faith of which said certificate was issued be found in
any respects untrue, then the certificate shall be null and void,
and all moneys paid on account of it be forfeited. This certifi-
cate was issued on the faith of the representations made as to the
relationship between Gray and plaintiff and would not have been
issued if the fact that they were not cousins had been known to
the officers of defendant."

*Conclusions of Law.*—We are of the opinion the judgment of the
court below should be affirmed. Appellee is a fraternal beneficiary
association organized and conducted not for profit, but solely for
the benefit of its members and that class of persons who are author-
ized to become beneficiaries in its certificates. These certificates and
the applications therefor, stipulate that the constitution and by-laws
of the order are made a part of the same, and by section 3 of said
constitution, the wife, children, adopted children, parents, brothers,
sisters or other blood relations, or persons dependent upon the
member are designated as the class of beneficiaries who may partici-
pate in the beneficiary fund. In his written application to become
a member of appellee's order Murray A. Gray named Rosie C. White
as beneficiary and represented that she was his cousin. This rep-
resentation was false and the evidence is ample, to sustain the court's
finding, that the officials of appellee, whose duty it was to decide
upon the issuance of certificates and to issue certificates, had no
notice or knowledge that the relationship between the said Gray and
Rosie C. White, appellant, was other than as stated in said appli-
cation until after the death of said Gray, and that they issued the
certificate sued on believing, and until his death believed, that the
said Rosie C. White was in fact his cousin. The certificate itself

recites that it is issued by the Sovereign Camp of the Woodmen of the World, and is issued in consideration of the representations, agreements and warranties made by the person named therein; that "if any of the statements or declarations in the application for membership and upon the faith of which this certificate was issued shall be found in any respect untrue, this certificate shall be null and void and of no effect, and all moneys which shall have been paid and all rights and benefits which have accrued on account of this certificate shall be absolutely forfeited without notice or service." The application for membership stated: "I hereby certify, agree and warrant that all the statements, representations and answers in this application—are full, complete and true, and I agree that any untrue statements or answers made by me in this application—or if I fail to comply with the laws, rules and usages of the order, now in force or hereafter adopted, my beneficiary. certificate shall become void and all rights of any person or persons thereunder shall be forfeited."

In addition to the provision of appellee's constitution referred to, in which the classes of persons who could become beneficiaries in a certificate issued by it are designated, we have the statute passed by the 26th Legislature of this State in 1899, Session Acts, p. 195, which was in force at the time the policy sued on was issued, in which fraternal beneficiary societies, as created by the laws of this State or permitted to do business in this State, are defined, and the classes of persons who can receive benefits from them are designated. The classes in this statute are designated to be the families, heirs, blood relatives, affianced husband or affianced wife or persons dependent upon the member at the time of his death. Thus, by the terms of this statute, as well as by the constitution of appellee's association, blood relatives could become lawful beneficiaries in certificates issued by appellee, and, at the time the contract sued on was executed, appellant, if she had in fact been the cousin of the deceased Gray, could have enforced said contract. It is made clear that the representation made by an applicant for membership in appellee's association of the relationship of the proposed beneficiary enables the officers of the association to determine whether such beneficiary is within the limitations prescribed by the constitution and by-laws of the order and the laws of the State where the applicant resides, and hence a material representation to be considered, and upon the faith of which, in a large measure, the certificate is issued. If the relationship, as represented in the application, is not within the classes provided for by the constitution and by-laws of the order and of the statute of the State, the Sovereign Camp or any of the officials thereof have no power or authority to issue a beneficiary certificate on such application. As has been seen, the trial court found that the certificate in this case was issued on the faith of the representations made by Murray A. Gray as to the relation-

ship between himself and the appellant; that said representations were false and fraudulent, and that the certificate would not have been issued if the fact that they were not cousins had been known to the officers of appellee. These conclusions, in our opinion, are correct under the evidence, and present such a case of fraud as renders the certificate upon which appellant seeks to recover void. To this effect is the case of Koerts v. Grand Lodge (Wis.), 97 N. W. Rep., 163. In that case the facts were that William Plums, an unmarried man, joined the order of Herman Sons, which was a beneficiary association organized for the purpose of providing a fund payable to the survivors of a member of the order. In his written application for a benefit certificate he named Annie Koerts as beneficiary, representing her to be his sister. The facts were that she was not his sister, or in any manner related to him, and on the question of false representations the court said: "In the present case it was falsely represented to the respondent's officers that the beneficiary was one of the class for whose benefit the mortuary fund was established, and the officers relied thereon and issued the certificate accordingly, and never ascertained the falsity of the representation until after the death of the assured. This makes a very clear case of fraud. The certificate never would have been issued in favor of the respondent except for the false representation. Her right rests upon the certificate alone, and when it is shown that its issuance in her favor was procured by fraud her claim must necessarily fail."

In the case of Supreme Council v. Green, 71 Md., 263, 17 Am. St. Rep., 528, Evans was a charter member of a subordinate lodge of the Grand American Legion of Honor, Elizabeth A. Green was named in his application for a certificate as beneficiary and represented to bear the relationship of niece to him. This representation was false, and the application, as in the case at bar, provided that any untrue or fraudulent statement made should forfeit the rights of all parties under the policy or certificate. The statement as to the relationship of the assured and the beneficiary named was treated by the court as a warranty, and on the question of its falsity said: "It is contended that improper relations existed between the insured and the beneficiary named, to wit, the appellee, and that the designation of her as applicant's niece was a cover to conceal the true relation. The jury seem to have found that immoral relations did not exist, and of course that question is not before us. Whatever may have been the motive of the deceased for stating the plaintiff, the beneficiary, to be his niece, when she was not, is wholly immaterial to the question for decision. A relationship was stated to exist which on its face placed the beneficiary named within one of the classes provided for by the corporation and allowed by the statute of Massachusetts; and the corporation was called on to look no further, but might rely on the warranty of its truth and the agree-

ment to forfeit, if falsely stated. It is not pretended there was any kinship in fact between the parties. It is conceded that there was not. The plaintiff testifies that there was not any relationship by blood, but says she called him uncle and he treated her as a niece, by mutual. understanding. . . . The relationship of the parties to each other was certainly peculiar, and on the theory of entire purity, the deceased was marvelously generous; but whether she could be regarded as a dependent within the meaning of the society's constitution and the statute of the State of Massachusetts, would admit at least of serious doubts .if the case turned on that point. We think the false statement of the insured, that appellee was his niece, so manifestly material, as it declared her a relative and qualified beneficiary, in view of the warranty of its truth and agreement to forfeit rights if false, should defeat this action. . . . The corporation seems to have relied wholly in that regard on the warranty of truth on the part of applicant, and agreement to forfeit if false. He warranted his statement true, and took the consequence of falsehood by forfeiture if false. Whether his statements were fraudulent or not, does not seem to be open to inquiry. It was a false statement—a misleading statement—that the beneficiary was a lawful beneficiary and the corporation had no further inquiry to make. She was declared a relative, and not a dependent; so that all that was necessary for the appellant to show was that she was not a relative in order to obtain protection through the warranty of truth and agreement to forfeit if false."

We think the remarks in the cases cited apply with equal rorce to the case under consideration, whether the false representation of Gray as to the relationship between himself and appellant be regarded as a material misrepresentation proved, or a warranty of its truth, the falsity of which worked a forfeiture.

The effort on the part of Gray to change the beneficiary named in the certificate to Rosie C. Gray, by the endorsement made on the certificate July 10, 1904, was ineffectual for that purpose and does not alter the case. Paul Reverra, clerk of the Local Camp, testified: "He just came up to me one night before he was leaving for the west and told me he wanted to change his policy, change the certificate, and I told him, 'all right; how do you want to make the change?' and he said he wanted to make it to his wife, and I said, all right; have you the certificate with you? and he said, yes. I filled it out just like he wanted it and told him to sign it. I filled it out myself and he signed it in my presence. This is all that was done." He further testified that he did not know until after the death of Gray that Rosie C. White was not related to him as cousin. The constitution and by-laws of the order provide: "That a beneficiary may be changed upon payment to the Sovereign Camp of the fee of twenty-five cents, which sum, together with the certificate, shall be forwarded by the insured to the Sovereign Clerk with his written

618 TEXAS CIVIL APPEALS REPORTS, VOL. 47. [November,

request on the back of his certificate, giving the name or names of such new beneficiary or beneficiaries, and upon receipt thereof the Sovereign Clerk shall issue and return a new certificate, subject to the same conditions and rate as the one surrendered, which addition shall be a part of the new certificate in which he shall write the name or names of the new beneficiary and record said change in the proper books of the Sovereign Camp." The Sovereign Clerk testified that this certificate had never been forwarded to him, nor had the name or money; nor had he ever heard of an effort or desire to change the beneficiary until after the death of the deceased. The constitution and by-laws of a fraternal beneficiary association become a part of the contract of insurance, and it has been uniformly held that where the laws of the order provide a method for changing the beneficiary, that method is exclusive and must be complied with. Flowers v. Woodmen of the World, 40 Texas Civ. App., 593, and authorities there cited.

Appellant contends that a person had no insurable interest in the life of a cousin; that it is against public policy in this State, as announced by the decisions of our courts, for policies of insurance of any character to be issued in favor of any person as beneficiary, promising benefits to such beneficiary upon the death of another in whose life such beneficiary has no insurable interest; that although the beneficiary who has no such interest could not recover on the policy, yet the company or fraternal beneficiary association issuing it, and which has received the premiums, could not defeat a recovery by the legal representatives, heirs or widow of the assured. That appellee having issued the certificate in this case in favor of a beneficiary to whom it was against public policy for it to issue, even if the representation that she was his cousin had been true, it can not avoid the certificate on the ground that it was issued upon the faith of that representation, and the certificate will, in law, and under the rules and by-laws of appellee, inure to the benefit of the appellant. This contention, which has been so ably presented and urged by counsel for appellant, seems to be predicated upon the decisions in McCorkle v. Texas Benevolent Asso., 71 Texas, 152; Price v. Knights of Honor, 68 Texas, 361, and other cases in line therewith. We have given the matter that careful consideration suggested by the force of the contention, and the zeal and ability with which it has been urged, but are clearly of the opinion that the principle announced in the cases relied on is not applicable or of controlling effect. Whatever our views might be were it not for the statute of 1899, to which we have referred, still that statute is an authoritative expression of the public policy in this State, given after the rendition of the decisions expressing perhaps a different view, and recognizes and names cousins or blood relatives as a class of persons to whom beneficiary certificates may be made payable by a member of a fraternal beneficiary association.

This being true, especially does it follow that the representation on the part of Murray A. Gray that Rosie C. White was his cousin was a material representation, and being false, avoided the certificate sued on under the provision of the contract to the effect, that if any of the statements or declarations in the application therefor and upon the faith of which the certificate was issued, shall be found in any respect untrue, the certificate shall be null and void and of no effect.

We think the evidence sufficient, perhaps, to support the trial court's finding that prior to the death of Murray A. Gray, the appellant became and was the common law wife of said Gray and appellee's cross-assignment of error attacking this finding is, therefore, overruled.

We believe the judgment of the lower court is correct and should be affirmed and it is accordingly so ordered.

*Affirmed.*

Writ of error refused.