## WRIGHT v. WRIGHT et al.
### No. 12566.

Court of Civil Appeals of Texas. Fort Worth. Nov. 21, 1931.

Rehearing Denied Jan. 9, 1932.

Bryan, Stone, Wade & Agerton, of Fort Worth, and F. T. Neel, of Menard, for appellant.

R. M. Rowland, of Fort Worth, W. H. Adkins, of Brady, and Lassiter, Harrison & Pearson, of Fort Worth, for appellees.

DUNKLIN, J.

The State Reserve Life Insurance Company issued to John Thomas Wright, of Brady, Tex., a life insurance policy, of date December 13, 1926. He died March 9, 1930, leaving the policy in full force and effect. The policy stipulated that should the insured die while the same was in force, then the company would pay $1,000 to "Daisy Wright, wife of insured, if then living." The policy contained this further provision: "If this policy is not assigned, the insured may change the beneficiary at any time, upon written request, accompanied by this policy for endorsement; but no change shall be effective until endorsed hereon by the company."

This suit was instituted by Daisy Wright against the insurance company and also against Mrs. M. J. Wright, the mother of the insured, upon allegations that the latter was claiming some interest in the proceeds of the policy. The insurance company filed an answer, admitting liability on the policy in the sum stipulated therein, with the further allegation that the proceeds of the policy were claimed by both Mrs. Daisy Wright and Mrs. M. J. Wright. There was a further allegation that the insurance company was unable to determine the respective rights of those two claimants, and the company invoked the powers of the court for such determination; and tendered the money into court subject to such disposition thereof as the court might make.

Upon a trial without a jury, the court rendered judgment awarding the proceeds of the policy to the defendant Mrs. M. J. Wright as against the plaintiff and the insurance company; and from that judgment the plaintiff has prosecuted this appeal.

Mrs. M. J. Wright filed a cross-action against the plaintiff and the insurance company, in which she claimed title to the proceeds of the policy on the ground that the insured had made her the beneficiary of the policy, as he was given the right to do under its terms, and by reason of such change the plaintiff was not a beneficiary at the time of the death of her husband. The alleged facts upon which the contention of such change of beneficiaries was based were as follows: "That prior to March 4, 1930, said John Thomas Wright and his wife, Daisy Wright, had permanently separated and were no longer living together as husband and wife; that on or before March 4, 1930, said John Thomas Wright, for good and sufficient reasons, decided to change beneficiary of said policy from his wife, Daisy Wright, to his mother, Mrs. M. J. Wright; that in pursuance of such decision he delivered said policy to his attorney and agent, W. H. Adkins of Brady, Texas, and authorized and instructed him to immediately take all steps and do all things necessary to accomplish such change of beneficiaries; that in accordance with such instructions said Adkins on March 4, 1930, wrote and duly mailed a letter to State Reserve Life Insurance Company stating the name of the assured and the number of the policy and notifying the company that John Thomas Wright desired to change the beneficiary of the policy to his mother, Mrs. M. J. Wright; that in response to said letter the insurance company on March 5, 1930, wrote a letter to said W. H. Adkins acknowledging receipt of his letter and sending him a printed or typewritten form to be signed by John Thomas Wright and returned to the company, accompanied by the original policy, so that the proper indorsement might

be made on the policy evidencing such change of beneficiaries; and that it was the purpose and intention of both John Thomas Wright and his said attorney and agent to to have said form completed and signed by Wright and returned to the company with the original policy as promptly as possible, and such would have been done within the next few days and the change duly noted on the policy but for the fact that before said attorney had an opportunity to see said Wright again and obtain his signature said John Thomas Wright was on March 9, 1930, killed."

There were further allegations to the effect that the provisions in the policy prescribing the manner in which the change of beneficiary should be made was solely for the benefit of the insurance company and not for the benefit of plaintiff, and therefore cannot be taken advantage of by her, and that the insurance company has waived any benefit thereunder by voluntarily admitting liability and tendering the proceeds of the policy into court with the prayer for a determination of the rights of the parties thereto.

Following is the evidence introduced in behalf of defendant Mrs. M. J. Wright, and there was no evidence introduced which in any manner controverted its truth:

"My name is W. H. Adkins. I am an attorney at law and reside at Brady, Texas. I knew John Thomas Wright, the insured in the policy of insurance involved in this suit. I had been attending to some business for him, such as drawing contracts and things of that sort for probably 18 months—I will say 12 months. He was living in McCulloch County, about 12 or 14 miles west of Brady when he died.

"I had a conversation with John Thomas Wright on March 4, 1930, in my office at Brady, Texas, relative to this policy of insurance. I was then his attorney. He then told me that he had the insurance policy and that he wanted to change the beneficiary from his wife to his mother. He and his wife were not then living together. On that occasion—March 4, 1930, Mr. Wright told me that he wanted to change the beneficiary under this policy from his wife, Mrs. Daisy Wright, to his mother, Mrs. M. J. Wright. I told him I would have to have the policy. He left and in about 20 minutes returned to my office with the policy of insurance which had been introduced in evidence by plaintiff. I wrote the State Reserve Life Insurance Company on the afternoon of March 4, 1930. The letter you now show me is the letter I wrote to the insurance company, and mailed it in the post office properly stamped and addressed to State Reserve Life Insurance Company of Fort Worth, Texas."

Said letter, which was thereupon introduced in evidence, is as follows:

"Shropshire & Adkins
"Lawyers
"Brady, Texas.
"March 4, 1930.
"State Reserve Life Insurance Co.,
"Fort Worth, Texas.
"Gentlemen:
"Mr. John Thomas Wright of this city holds policy No. 2289 in your company, in which his wife, Mrs. Daisy Wright, is beneficiary.

"He desires to change the beneficiary of this policy to his mother, Mrs. M. J. Wright. Please send us the necessary blank for him to sign.
"Very truly yours,
"Shropshire & Adkins
"By [Signed] W. H. Adkins."

Mr. Adkins further testified: "I received a reply to my letter of March 4, to the insurance company. That reply letter was dated March 5, 1930, and I received it on March 6, 1930. I identify the letter you now hand me as the one I received from the insurance company."

Defendant thereupon introduced said letter in evidence, which is as follows:

"(Letterhead State Reserve Life Insurance Co.)

"Fort Worth, Texas.
"March 5, 1930.
"Mr. W. H. Adkins,
"c/o Shropshire & Adkins,
"Brady, Texas.
"Dear Mr. Adkins:
"In accordance with your letter of March 4th we enclose herewith application for change of beneficiary under policy #2289 on the life of John Thomas Wright.

"If you will have Mr. Wright execute the application as indicated in the presence of two witnesses and return it to this office, accompanied by the policy for endorsement, we will be glad to give the matter our further attention.

"Be sure to have Mr. Wright insert the full Christian name and relationship of the person he desires to designate.
"Yours very truly,
"S. H. Weatherford, Secretary."

Mr. Adkins further testified:

"There was enclosed in the letter from the insurance company which I have just identified a printed form, partly filled in on a typewriter, to be signed by John Thomas Wright as a form of request to the insurance company to change the beneficiary thereunder.

"You asked me what happened after receiving this letter from the insurance company on the 6th with that form of application for change of beneficiary. Well, John Wright had told me to sign the application for him as I was representing him in this matter and

in a suit then pending in the district court of McCulloch County. But when I read the application and the letter and the provisions of the policy I concluded that I had better let him sign it. I don't know just how far I got with it, but at any rate, upon the afternoon of March 4 he asked me to send this application off to change the beneficiary under the policy. When I received this letter on March 6, after reading the letter and application, I concluded that I had better just wait and let him sign it himself. I didn't see him any more after I received this letter and this application.

"Q. Now, what were the circumstances that prevented you from seeing him any more? Where was he? To which question the witness answered: A. I don't know where he was. Mr. Wright and I had been to Mason on the morning of March 4; we got back to Brady about one o'clock and he told me that he probably would be out of town quite a good deal, because he had made a deal or was figuring on making a deal with Mr. Capps, I think it was, in Mason County to put a bunch of goats—I mean deal—buy and deliver a bunch of goats. However, I saw him the next day, which was Wednesday, March 5. But I did not see him any more after March 5 before his death. I have explained all the facts and circumstances as to why I did not get hold of Mr. Wright before his death on March 9 and have him sign the application. I didn't see him after March 5 until he was killed. With reference to my understanding, if any, with Mr. Wright as to whether he would call back to my office after he got through with his business in Mason County for the purpose of attending to this matter, I will say he asked me to sign it (the application for change of beneficiary) in case it came in—he asked me to sign it for him; but I concluded to wait until he came in, after I read the letter and the application. I did not know of any way I could get hold of him and get his signature before the 9th; I didn't know where he was. Mr. Wright was killed March 9, 1930, which was Sunday night.

"I don't remember whether I notified the insurance company after Mr. Wright's death that his mother claimed the money due under this policy or not. However, one of his brothers came to Fort Worth and talked to the insurance company; that is, he told me he had been up here. At any rate the claim was presented to the insurance company on behalf of Mr. Wright's mother. I know Mrs. M. J. Wright, one of the defendants in this suit, is the mother of John Thomas Wright, the assured.

"Mr. Wright went and got the policy which has been introduced in evidence on March 4, 1930, and brought it to me at my office. I held the policy a few days, but don't remember just how long after Mr. Wright's death, and

then delivered it over to Mr. Lively, who is a brother-in-law of John Thomas Wright, deceased; I just wanted his folks to have it. John Wright's mother and his family have had the policy ever since. They brought it up here (to Fort Worth) yesterday and turned it over to you (Mr. Rowland, counsel for Mrs. M. J. Wright) to be introduced in court."

No reversible error is shown in overruling appellant's objections to the testimony given by Mr. Adkins based on an alleged lack of sufficient pleading to warrant its admission; and hence those assignments of error are overruled.

The principal and controlling question is whether or not under the undisputed facts the alleged change of beneficiary from Mrs. Daisy Wright to Mrs. M. J. Wright was effected.

By the terms of the policy the insurance company expressly and specifically bound itself to pay Mrs. Daisy Wright $1,000 upon the death of her husband, John Thomas Wright, if the assured did not change the beneficiary in the manner prescribed for such change. It cannot be then said that the company was in no manner interested in the method provided for such change of beneficiary, since, manifestly, if the benefits had been paid to some other person claiming as a beneficiary without a compliance by the assured with the provisions for making such a change, and without a decree of court authorizing such payment, the company would still be liable to Mrs. Daisy Wright for the amount of the insurance. The company could waive such requirements as proof of death and the performance of other acts relating solely to its liability to pay the insurance to the proper person, but it was not within its powers to in any manner prejudice the rights of the respective claimants to the funds in controversy arising from the terms of the policy.

The following is quoted from 7 Cooley's Briefs on Insurance (2d Ed.) p. 6464, which is followed by citation of many decisions of the courts throughout the country, to wit: "The general rule undoubtedly is that though the association admits its liability and pays into court the amount due on the certificate, this does not affect the rights of the original beneficiary."

And in the same volume, page 6441, it is further said: "As a general rule, a change of beneficiary must be in writing, and a mere parol declaration of the desire to change, though made to the proper officer, is insufficient."

And again, on page 6438 of the same work: "The insurer may make reasonable regulations defining the method by which a member may change the beneficiary named in his benefit certificate, and when such regulations are made they become part of the contract,

and the right to change can be exercised in no other way."

A multitude of decisions are cited in support of that announcement on pages 6438 to 6447, inclusive.

Following the quoted statements there is a further announcement, likewise supported by many cited decisions, to the effect that in order to accomplish a change of beneficiary in a life insurance policy which would result in a termination of the interest of the original beneficiary, there must be at least a substantial compliance with the requirements of the contract of insurance permitting such a change. The opinion in the case of Cronbach v. Ætna Life Insurance Co., 153 Tenn. 362, 284 S. W. 72, by the Supreme Court of Tennessee, fully supports those announcements in the text. In 37 Corpus Juris, p. 584, § 350, which is cited with approval in that decision, it is said, in part, that: "Policies authorizing a chance of beneficiary usually specify the mode of effecting the change, as by filing a written notice or request, accompanied by the policy, at the home office of the company, and the indorsement of the change on the policy by the company. * * * On the principle that equity regards as done that which ought to be done, the courts will give effect to the intention of insured by holding that the change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy, as where he sent a proper written notice or request to the home office of the company but was unable to send the policy by reason of circumstances beyond his control, as where it has been lost, or was in the possession of another person who refused to surrender it or was otherwise inaccessible, or where he sent both the policy and a proper written notice or request and all that remained to be done were certain formal and ministerial acts on the part of the company, such as the indorsement of the change of the policy, and these acts were either not done at all or were done after the death of insured. Of course the rule is not applicable where insured has not done all that he reasonably could to meet the conditions of the policy."

And among other authorities cited with approval in that case is Ancient Order of Gleaners v. Bury, 165 Mich. 1, 130 N. W. 191, 193, 34 L. R. A. (N. S.) 277, in which the following is said: "The beneficiary has a right to the proceeds of the certificate of insurance, subject to the right of the member to change the beneficiary according to the terms of the by-laws and regulations of the society, which are a part of the contract of insurance; and the right of the beneficiary to have this contract carried out in the manner provided for is as binding upon the member as his right to change the beneficiary is binding upon the beneficiary and the society."

And in the last-cited case the following is quoted from Fink v. Fink, 171 N. Y. 616, 64 N. E. 506: "Mere intention to make a change is not enough, for the acts prescribed to carry the intention into effect are forms imposed upon the execution of a power, and they must be observed or the change cannot be effected."

See, also, Flowers v. Sovereign Camp, W. O. W., 40 Tex. Civ. App. 593, 90 S. W. 526; Gray v. Sovereign Camp, W. O. W., 47 Tex. Civ. App. 609, 106 S. W. 176 (writ of error denied).

Appellee relies upon the decision of the Supreme Court in Splawn v. Chew, 60 Tex. 532, in which it was held that there was an effective change of beneficiary of the policy there involved. There was a like holding in other decisions cited by appellee, such as Coleman v. Grand Lodge Colored Knights of Pythias (Tex. Civ. App.) 104 S. W. 909; Grand Lodge, Knights and Daughters of Tabor v. Vann (Tex. Civ. App.) 282 S. W. 265; Richardson v. Faithful (Tex. Civ. App.) 289 S. W. 1054. But in Splawn v. Chew, 60 Tex. 532, it was pointed out that in the absence of authority given to the assured in the contract of insurance to change the beneficiary, he would have no authority to make such a change, but that if the contract of insurance gave him that authority such a change could be effected without the consent of the beneficiary named in the policy or other contract of insurance. In that case it was held that the authority of the assured to make the change was conferred by the constitution and by-laws of the insurer which became a part of the certificate held by the assured, stipulating for payment of the insurance in the event of the death of the holder of the certificate. And in that decision it was expressly stated that whether or not the authority of the holder of the certificate of insurance to substitute another beneficiary for the one originally designated, existed, depended entirely upon the terms of the contract of insurance. The other decisions cited by appellee, in which it was held that a change of beneficiary was accomplished, are based upon the same principle and reasoning as announced in Splawn v. Chew. In our opinion, none of those authorities are in conflict with those heretofore discussed by us, which we believe to be sound and controlling, and by reason of which we have concluded that the alleged change of beneficiary from Mrs. Daisy Wright to Mrs. M. J. Wright was never effected; and therefore the judgment of the trial court to the contrary and awarding a recovery in favor of Mrs. M. J. Wright is reversed, and judgment is here rendered in favor of the plaintiff, Mrs. Daisy Wright, who is appellant here, against the State Reserve Life Insurance Company and Mrs. M. J. Wright for the sum of $1,000, the amount named in the policy and which sum was deposited in the registry of the trial court; but the decree of the trial court allowing the defendant State Reserve Life Insurance Company an attorney's fee of $50 for

filing its answer in the suit, to be deducted from the sum so deposited in court, is affirmed.

All costs incurred by appellant in the trial court and in this court on appeal are taxed against the appellee, Mrs. M. J. Wright.