**METROPOLITAN LIFE INS. CO. et al. v. QUILTY.**

**No. 6288.**

Circuit Court of Appeals, Seventh Circuit. Nov. 19, 1937.

Nathaniel Rubinkam and William S. Allen, both of Chicago, Ill., for appellant Metropolitan Life Ins. Co.

Thomas Francis Howe and Henry S. Rademacher, both of Chicago, Ill., for appellant General Motors Corp.

Patrick J. Lucey and William K. Tell, both of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

By this action appellee sought to recover upon a certificate issued by the Metropolitan Life Insurance Company to John M. Quilty, her deceased husband. The certificate was issued under a group policy issued by the Insurance Company to the General Motors Corporation, which covered the employees of that corporation and its subsidiaries. Appellee was named as the beneficiary in her husband's certificate. The company and the corporation were joined as defendants. The cause was tried to a jury and at the close of all the evidence all the parties separately moved for a directed verdict. Thereupon the court discharged the jury and entered a finding and judgment in favor of appellee against both appellants. From that judgment this appeal is prosecuted.

The deceased was an employee of the Hertz Drivurself Corporation, an affiliate of General Motors. For many years he had been insured as such employee under the group policy referred to, and his salary was such that his certificate called for $20,000 insurance. Under the policy he was not entitled to disability benefits.

The policy provided that it might be discontinued by the General Motors Corporation (termed the employer), and further provided that the life insurance on any employee insured thereunder, who should cease to be in the employ of the employer, should be discontinued thirty-one days after the date such employee actually left the employ of the employer.

On May 1, 1933, the policy was amended to provide for an extended death benefit in all cases where a person formerly insured died within twelve months of cancellation of his coverage following a continuous total disability. Subsection (c) of Section 1, and Sections 11 and 12 of the original policy were affected by this amendment. Those portions of the amendment which are regarded by either the appellants or appellee as pertinent to the questions presented are set forth in the margin.[1] They refer to the respective sub-

[1] "(c) Extended Death Benefit—Upon receipt by the Company of due notice and proof—in writing—that the death of any Employee formerly insured hereunder has occurred prior to his sixty-fifth birthday and (a) within twelve months from the date of termination of his employment, as defined by Section 11 hereof, or (b) within a period, beginning with the date of termination of employment, equal to the time during which the Life Insurance hereunder on such Employee had been in force, whichever is less, and upon receipt of further proof—in writing —that such Employee was, from the date of termination of his employment to the date of his death, continuously and totally disabled, as a result of bodily injury or disease, so as to have been thereby prevented from engaging in any and every business or occupation and from performing any and all work for compensation or profit, * * * the Company shall pay, subject to the Terms hereof,

to the Beneficiary of record, the amount of Life Insurance, if any, in force on account of such Employee at the date of the termination of his employment, according to the Schedule of Benefits; provided, however, that no payment shall be made under the provisions of this Section unless such notice and proof of such death and of such disability is submitted to the Company within ninety days after the date of such death; nor shall any such payment be made unless this Policy is in full force and effect at the date of the death of such Employee.

"If an individual policy shall have been issued and become effective pursuant to application made in accordance with the provisions of Section 12 hereof, no payment shall be made under the provisions of the preceding paragraph unless such individual policy shall be surrendered to the Company without claim thereunder, in which case the Company will refund to the beneficiary under such individual pol-

jects of extended death benefits, discontinuance of insurance, and conversion privilege.

John M. Quilty never availed himself of the conversion privilege, and did not convert his group coverage to any other form. Upon written notice of these proposed amendments by General Motors Corporation, John M. Quilty who was then an employee of, and in charge of the Philadelphia office of Hertz Drivurself Corporation, returned to General Motors Corporation the following communication:

"To General Motors Corporation:

"I have read the foregoing announcement of a change in the Group Life Insurance Plan for the Employees of the General Motors Corporation effective May 1, 1933, and return herewith my Certificate to be exchanged for a new Certificate in accordance with such announcement."

"(signed) John M. Quilty.
"Date, April 28, 1933."

Quilty thereupon returned his original certificate to the office of the Hertz Drivurself Corporation, at Pontiac, Michigan, and a new certificate as described in the written notice of the amendments was issued and forwarded to him.

He terminated his employment with the Hertz Corporation on January 26, 1934, and thereafter was employed by Oursman Chevrolet Company until the date of his death on April 1, 1934. The last named company was an independent company not affiliated with or a subsidiary of General Motors Corporation. He was not totally and continuously disabled from the date of the termination of his employment with General Motors or at any time thereafter.

On July 6, 1934, the General Motors Truck Company, of Pontiac, Michigan, received its first notice of decedent's death by letter from Mrs. Quilty's attorney. It was directed to Mr. J. B. Babcock and stated, among other things not here pertinent: "I have been informed by Mrs. Quilty that either you or someone acting for you gave notice to the Metropolitan Life Insurance Company of the death of Mr. Quilty. I wonder if you would be good enough to give me the details of the notification which you gave, if you did notify the Metropolitan Life Insurance Company and what response, if any, you received from them. This is quite important, as, from the reading of the clause above cited, there might be a possibility if notice was actually given to the company,

---

icy the premiums paid thereon, with interest at the rate of six (6) per centum per annum."

"Section 11. Insurance to Be Discontinued.

"(a) The Life Insurance on any Employee insured hereunder (except the Life Insurance on Employees insured hereunder as Employees of Distribution Units of the Employer) shall cease automatically thirty-one (31) days after the date of termination of employment of such Employee, except as provided in the next succeeding paragraph (which is Section 12). The Temporary Disability Insurance on any such Employee shall cease automatically on the date of the termination of employment of such employee, except as provided in the second succeeding paragraph.

"As to the Life Insurance of any Employee insured hereunder * * * cessation of active work shall be deemed to constitute the termination of his employment except that in case of the absence of such Employee from active work on account of:

"(1) Sickness or Injury,
"(2) Retirement,
"(3) Leave of absence or Temporary Lay-Off of not longer than two months

if the Employee has two years but less than 10 years of service,

"(4) Leave of Absence or Temporary Lay-Off of not longer than five months if the Employee has ten or more years of service, the employment of such Employee may, for the purposes of the Life Insurance hereunder, be deemed to continue until terminated by the Employer. * * * *"

"Section 12. Conversion Privilege

"Upon termination of employment of any Employee, all his insurance hereunder shall cease in accordance with Section 11 hereof, and the said Employee shall be entitled to have issued to him by the Company, without evidence of insurability, and upon application made to the Company within thirty-one days after such termination of employment, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age (nearest birthday), a policy of Life Insurance in any one of the forms customarily issued by the Company, except Term Insurance, in an amount equal to or, at the option of the Employee, less than the amount of his insurance under this Policy at the time of such termination. * * * *"

that we may collect some money for Mrs. Quilty * * *"

A reply to this letter was made by the Insurance Division of General Motors Corporation on July 20, 1934, but the query as to notice was not answered. It stated that the attorney's letter had been referred to the Metropolitan Life Insurance Company who desired information as to the name of the independent Chevrolet dealer with which Quilty became affiliated in January, 1934; the exact date of such affiliation; the cause of his death; and the name and address of the attending physician during his last illness. This information was supplied by a letter of Mrs. Quilty's attorney on July 23, 1934, stating that decedent entered the employ of Ben Oursman, Washington, D. C. on January 27, 1934, and died April 1, 1934. Proof of death was made and forwarded by appellee to the insurance company on August 1, 1934.

On August 8, 1934, the Metropolitan Life Insurance Company notified appellee's attorney that under the terms of the contract all insurance on Quilty's life ceased thirty-one days following his cessation of employment by General Motors Truck Corporation, and that no claim was allowable.

With respect to appellant, General Motors Corporation, the complaint avers:

"* * * that during the said period of employment of the said John M. Quilty, deceased, all of the payments of premiums on behalf of said benefit group policy on his behalf were deducted from salaries due and owing to the said John M. Quilty by the Employer, and that it was and became the duty of the Employer under the terms of said policy to notify the Insurance Company of the termination of the employment of said John M. Quilty and later of his death, but that contrary to its duty in that regard, the Employer wholly failed and neglected to so notify the said insurance company."

█ It is quite obvious that the judgment against both appellants cannot stand, for recovery against one precludes recovery against the other. In such cases the employer does not act as agent for the insurer. In procuring the policy, obtaining applications of the employees, taking pay roll deduction orders, reporting changes in the insured group, paying premiums, and doing generally whatever may serve to obtain and preserve the insurance in force they act as agents of the employees, or for themselves. See Boseman v. Connecticut General Life Insurance Company, 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036.

█ The theory upon which appellee sought to recover against General Motors Corporation is that of negligence in failing to notify the insurance company of decedent's death. In order to recover against it on that theory she must prove that damage proximately resulted to her as a cause of that negligence; if it be negligence. However, she has been awarded a judgment against the insurance company which presupposes that proper notice of death was given to the company, hence she could not have been damaged by the alleged negligence. Likewise if the judgment be permitted to stand against General Motors on account of the alleged negligence it must be presumed that the insurance company was not properly notified, and in that event it would not be liable.

█ However, no duty rested upon the employer to notify the insurance company of decedent's death, and there was no competent evidence produced to show that the employer had knowledge of his death in time to make proof of loss, even if the policy be conceded to be in force at the time of death. It should be stated here that appellee's averment is incorrect, that during the period of decedent's employment all of the payments of premiums on behalf of the benefit group policy on his behalf were deducted from salaries due and owing to him by the employer. The policy does not so provide and the uncontroverted evidence is to the contrary. We think there is no liability against General Motors Corporation.

█ Aside from the question of notice we think appellee was not entitled to recover against the insurance company for reasons concerning which General Motors Corporation was not concerned and for which it could not be held liable for negligence or otherwise.

Subsection (c) of Section 1 of the policy sets forth the only conditions under which appellee could recover under the policy after the expiration of thirty-one days from January 26, 1934, which was the day he ceased working for this appellant employer. It was incumbent upon her to prove that decedent was, from January 26, 1934, to the date of his death on April 1, 1934, continuously and totally disabled as a result of bodily injury or disease, so as

to have been thereby prevented from engaging in any and every business. or occupation and from performing any and all work for compensation or profit. It was neither proved nor claimed that this condition existed, but the contrary was admitted. Likewise it was neither claimed nor proved that decedent's cessation of work for General Motors was occasioned by his sickness, injury, retirement, leave of absence or temporary layoff as referred to in Section 11 of the policy.

We see no ambiguity in the language of this policy, and we feel constrained to hold that it lapsed thirty-one days after decedent ceased his employment with the appellant employer. This being true the question of notice becomes immaterial. Judgment reversed as to both appellants.

