**JOHNSON v. JOHNSON.**

No. 10806.

Circuit Court of Appeals, Fifth Circuit.

Dec. 9, 1943.

---

Allan H. Kottwitz and A. B. Wilson, both of Houston, Tex., for appellant.

W. L. Kemper, of Houston, Tex., for appellee.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Will Johnson was a porter, employed by Pullman, Inc. (hereafter called "Pullman"). The Prudential Life Insurance Company had issued a group policy to Pullman, insuring employees, named in the record of employees, of the latter, including Will Johnson. A master policy was issued to Pullman containing the insurance contract, but a certificate was issued to each person covered by the master policy. The policy and the certificate provided that the beneficiary might be changed in accordance with the terms of the policy by the insured employee, at any time while the insurance was in force, notifying the company, through the employer, but that such change should "take effect when due acknowledgment thereof is furnished by the company to such person insured, and all rights of his or her former beneficiary or beneficiaries shall thereupon cease". Will Johnson made Annette Johnson, his then wife, the beneficiary when the certificate was issued. In 1941 he changed the beneficiary to Mary Lee Jackson, a niece. In 1942 he changed the beneficiary to Sallie Johnson. He was not without experience in the matter of changing beneficiaries. On August 10, 1942, the insured wrote the following letter to his employer:

"Houston, Texas,
"August 10, 1943.
"The Pullman Company,
"Group Insurance Bureau,
"Chicago, Illinois.
"Gentlemen:
"This letter is to advise you that I wish to name as my beneficiary, Ethel Mildred Johnson, in and under the policy that I carry with you and I direct that you pay the benefits due under such policy to Ethel Mildred Johnson as my beneficiary at my death. Ethel Mildred Johnson is my wife.
"Very truly yours,
"(Sgd.)    Will Johnson,
"Will Johnson,
"Pensioned Pullman Porter,
"2501 Nettleton St.,
"Houston, Texas."

Accompanying the letter to Pullman was the following affidavit, which was duly notarized:

"State of Texas,
"County of Harris.
"Know all men by these presents: That I, Will Johnson, of Houston, Harris County, Texas, for and in consideration of the natural love and affection which I have for my beloved wife Ethel Mildred Johnson, do hereby name her as beneficiary under all policies of insurance issued on my life and more particularly those policies issued by Pullman Porters Benefit Association of

America and the Group Insurance of The Pullman Company, both companies or organizations being in Chicago, Ill., and to both companies I have on this date directed to make such change on their records to be effective as' of this date.

"I agree that for and in consideration of the nursing and attention and support which I am now and have for some time received from my said wife that I will never change her name from such beneficiary and I declare such beneficiary, Ethel Mildred Johnson, to and from this date to be my beneficiary for all sums of money due to any one by reason of my death and that this designation of beneficiary shall be and is irrevocable and shall continue to my death.

"I further agree that the said Ethel Mildred Johnson shall have the irrevocable right to collect all of said money or sums due as aforesaid.

"In witness to the above I have hereunto set my hand at Houston, Texas, this 10th day of August, 1942.
"(Sgd.)                    Will Johnson."

The affidavit and letter were received by Pullman on the 12th of August, two days before Will Johnson died.

For some reason, not explained by the record, the letter and affidavit were not received by the Insurance Company until August 27, 1942, or thirteen days after the death of the insured. Ethel Mildred Johnson was the wife of Will Johnson at the time of his death and Sallie Johnson was his sister.

The Insurance Company filed a bill in the nature of a bill of interpleader, admitted that it owed the face of the policy to someone, and set up the facts as to the change, or attempted change, in beneficiary from Sallie Johnson, the sister, to Ethel Mildred Johnson, the wife. Proceeds of the policy were tendered into Court to be paid as the Court should direct.

The propriety of the interpleader having been adjudged, the sister and the wife interposed their respective claims to the proceeds of the insurance policy. Sallie Johnson, .the sister, alleged that there had been no lawful change of beneficiary; that Will Johnson did not have the mental capacity to execute the documents; and 'that he did not execute the same freely but under undue influence. The wife claimed that the efforts to make her the beneficiary had been fully effectuated or, if not, that

the insured had done all within his power to comply with the provisions of the policy in reference to change of beneficiary, and that strict compliance with the provisions of the policy for change of beneficiary was for the protection of the Insurance Company, and that the Company, by its interpleader, had waived strict compliance with the provisions of the policy.

It was testified by witnesses Osborne and Cavanaugh, employees in the office of Pullman, Inc., at Houston, that insured's wife had made several requests upon them for blank forms to be used in requesting change of beneficiary, but that Johnson had telephoned these witnesses and requested them not to furnish his wife with the blanks because he did not desire to change the beneficiary. Witness Lowe, another Pullman porter, testified that Johnson had requested him not to supply his wife with such blank forms for use in changing the beneficiary in another insurance policy. The Court, however, found on the strength of the letter, affidavit, the will of the insured, and the testimony of the wife that Johnson had for some weeks prior to his death been trying to obtain blanks that he thought necessary to change the beneficiary. The Court also found that Johnson had full mental capacity to execute the documents of August 10, 1942, and that he did so freely and without undue influence.

We will not disturb these findings of fact although the undisputed testimony of these witnesses is at least sufficient to cast some doubt as to the actual desires of Will Johnson in the matter. His wife was very diligent in seeking to have the change made. The Court below found, and we will assume, that Johnson intended and attempted to make his wife the beneficiary.

The lower Court further concluded that the requirements of the policy in reference to change in beneficiary were not for the benefit of the sister but for the benefit of the Insurance Company, and that it had waived strict compliance with these provisions by filing the interpleader suit and tendering the money into Court; that if such provisions were for the benefit of the sister they had been sufficiently complied with by Johnson's placing the documents for the change of beneficiary in the hands of Pullman, Inc., as agent for the Insurance Company two days before his death; that the insured did all that he could reasonably have done; and that the wife was the le-

gal beneficiary at the time of his death. From a judgment in favor of the wife the sister appealed.

We have not been aided by any brief or argument in behalf of the wife.

█ We agree with the lower Court that the Insurance Company could have waived strict compliance with the provisions for the change of beneficiary in a policy which permits, as does this one, the insured to change the beneficiary without the consent of the beneficiary theretofore named, but we think that such a rule is restricted to instances where the waiver was made during the life of the insured. The rights of the parties became fixed at the death of the insured, and the Insurance Company could not thereafter by waiver affect or divest the right of a beneficiary which became vested upon the death of the insured. We disagree with the lower Court that the filing of the interpleader suit, under the circumstances of this case, should be construed as a waiver so as to affect rights of third parties which had become fixed by the death of the insured prior to such alleged waiver.

In Garabrant v. Burns, 130 Tex. 518, 111 S.W.2d 1100, 1103, the Commission of Appeals of Texas, in an interpleader suit where the proceeds were deposited in the registry of the Court, held that the right of a named beneficiary in an insurance policy became an absolute right upon the death of the insured unless the insured had "in the manner prescribed" defeated it by the changing of a beneficiary. In that case the Court did not expressly pass upon the question of whether or not the filing of an interpleader was a waiver, but it evidently did not so consider it. In Kelley v. McDonald, 83 S.W.2d 414, 416, the Court of Civil Appeals of Texas expressly held that the Insurance Company, by tendering the amount due under the policy into Court and requesting its discharge, had not waived the provisions of the policy relating to the manner and form of changing the beneficiary. The Court said: "It waived none of its legal rights, because, under the terms of the policy, it owed the money due on same to some person, and it was nothing but good business on its part to permit the court to designate the proper person to receive it. It is true the insurance company could have waived, if it desired, any provision of the insurance contract beneficial to it, 'but', as said in the case of Wright v.

Wright [Tex.Civ.App., 44 S.W.2d 1019], supra, 'it was not within its power to in any manner prejudice the rights of the respective claimants to the funds in controversy arising from the terms of the policy.' This, in our opinion, is a sound rule. There was nothing the insurance company could do after the death of Charles H. McDonald, Jr., that would embarrass in the least either of the claimants to the proceeds of this policy of insurance. On the death of McDonald the rights of the parties to this litigation were fixed."

In Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 680, 78 L.Ed. 1206, 91 A.L.R. 950, a case arising in Texas, the Court said: "The purpose of the interpleader statute was to give the stakeholder protection, but in no wise to change the rights of the claimants by its operation. * * * The court is to weigh the right or title of each claimant under the law of the state in which it arose, and determine which according to equity is the better. * * * No one's rights are intended to be altered by paying the fund into the court, which as an impartial neutral is to determine them."

See also Meyer v. Meyer, 8 Cir., 79 F. 2d 55; Wright v. Wright, Tex.Civ.App. 44 S.W.2d 1019.

We are aware that there are decisions holding that the filing of an interpleader, to have the rights of those claiming to be the beneficiary under a policy of insurance settled, constitutes a waiver by the insurance company of the right to insist upon strict performance of the provisions of the policy for effectuating a change of beneficiary, but they seem to be contrary to the rule laid down by the Supreme Court and the Courts of Texas. The purpose of filing an interpleader in such circumstances is to allow the contesting parties to have their rights determined in a Court of equity so as to protect the Plaintiff from double liability, and to preserve intact the rights of any claimant to the fund, but not to confer any additional rights upon claimants.

It is admitted that at the time of the death of the insured the application for change of beneficiary had never reached the Insurance Company; consequently, it had no opportunity, prior to the death of the insured, to waive such provisions of the policy, unless it be held, as a matter of law, that Pullman, Inc., was an agent of the Insurance Company and authorized to act for it in such matters. The Court below so

934

held, but the authorities appear to be to the contrary.

In Boseman v. Connecticut General Life Insurance Company, 301 U.S. 196, 57 S.Ct. 686, 690, 81 L.Ed. 1036, 110 A.L.R. 732, it was held that notwithstanding Section 5056 of the Revised Civil Statutes of Texas the employer, in the matter of group insurance, was not the agent of the insurance company. The Court said: "Employers regard group insurance not only as protection at low cost for their employees but also as advantageous to themselves in that it makes for loyalty, lessens turn-over and the like. When procuring the policy, obtaining applications of employees, taking payroll deduction orders, reporting changes in the insured group, paying premiums, and, generally, doing whatever may serve to obtain and keep insurance in force, employers act not as agents of the insurer, but for their employees or for themselves."

See also Metropolitan Life Insurance Company v. Quilty, 7 Cir., 92 F.2d 829.

█ In the present case Pullman paid forty per cent of the premium. It was, in fact as well as in law, acting for itself and its employees. We are also persuaded in our view that the Texas Statute which makes one who collects premiums, etc., an agent of the insurance company, would not be applicable in this case because of the fact that a corporation cannot be an insurance agent under the Statutes of Texas (Art. 5064, Revised Civil Statutes, 1925).

We conclude that the delivery to Pullman by the insured of the letter and affidavit of August 10, requesting change of beneficiary, was not a delivery to the Insurance Company or to an agent of the Company, but that Pullman was the agent of the insured.

Applying the rule above announced to the facts in this case we find that the insured requested his agent, Pullman, Inc., and not the Insurance Company, to make the change in beneficiary. This request to his agent was received on the 12th of August and before any action was taken by his agent the insured died on the 14th day of August. Under the terms of the policy and the certificate the change would not take effect until due acknowledgment of the request was furnished by the Insurance Company to the insured. Before the agent of the insured could act on the request, or complete it, the insured died and thereby revoked the authority of his agent to act in the premises. Thompson v. Weems, 5 Cir., 111 F.2d 566, 568.[1]

█ It was thirteen days after the death of Will Johnson before his agent, Pullman, delivered his request for a change of beneficiary to the Insurance Company. The death of Johnson thirteen days before had revoked the authority of his agent to act. The rights of the beneficiary became vested upon his death, at which time there had not been a compliance with the provision in the policy that the beneficiary might be changed by written notice to the Company, and, under the provision that "Such change shall take effect when due acknowledgment thereof is furnished by the Company to such person insured and all the rights of his (or her) former beneficiary or beneficiaries shall thereupon cease", the change could not then be effected. Under the provisions of the policy the right of a former beneficiary would not cease until acknowledgment of the change was furnished by the Company to the insured. Notice to the insured was never given and could not then have been given because of the death of the insured.

█ We recognize it to be well settled that if the insured has done all within his power to effect a change in beneficiary and that the failure to make the change was chargeable to the Insurance Company, or if the facts and circumstances were such as to show that the Insurance Company before the death of the insured waived strict compliance with the requirements in the policy, equity will treat the change as having been made under the maxim that "equity will treat as having been done that which should have been done". But we do not think that the facts bring the present case within the scope of the rule announced. The insured had it within his power to have changed the beneficiary had he lived, but he failed to confer on his agent the power to act after his death.

The judgment of the Court below is reversed with direction to enter judgment in favor of Sallie Johnson.

Reversed.

---

[1] In Thompson v. Weems, supra, the Court said: "* * * and we are faced with the fact that he (insured) merely directed his agent to notify the insurer to change the beneficiary and died (the law revoking the agent's authority) before the latter had acted in pursuance of it."