## PRICE v. SUPREME HOME OF THE ANCIENT ORDER OF PILGRIMS.
(No. 818–4486.)

(Commission of Appeals of Texas, Section A. June 16, 1926.)

1. **Courts** ⬯247(7)—**Holding by Court of Civil Appeals that appointment of second beneficiary under benefit certificate permitting change of beneficiary on application was valid, though received by society after death of member, held not in conflict with other decisions.**

Holding by Court of Civil Appeals, under constitution and certificate of fraternal benefit society permitting change of beneficiary at any time by application, that appointment of second beneficiary was valid, though instrument of appointment was received by society after death of member, *held* not in conflict with decisions of other Courts of Appeal.

2. **Insurance** ⬯726.

Liberal interpretation in favor of member of benefit society should be given in case of doubt.

3. **Insurance** ⬯784(2)—**Change of beneficiary under benefit certificate, permitting change on application, held valid, though application for change was received by society after death of member.**

Under constitution and certificate of fraternal benefit society, permitting change of beneficiary at any time by making application, change of beneficiary is valid, though application for change, handed to attorney by member with intention that it be delivered to society, was not received by society until after death of member.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by Carrie Price against the Supreme Home of the Ancient Order of Pilgrims. Judgment for plaintiffs as reformed was affirmed by the Court of Civil Appeals (274 S. W. 1019), and plaintiff brings error. Affirmed.

Porter & Porter, of Greenville, for plaintiff in error.

Ross & Wood, of Houston, and Clark & Clark, of Greenville, for defendant in error.

NICKELS, J. Carrie Price sued upon a fraternal benefit certificate issued to Ann Burns, her mother, and naming Carrie as the sole beneficiary. The order defended upon the ground that shortly prior to her death Ann Burns competently designated her two daughters, Carrie Price and Alberta Rainey, as the beneficiaries, in equal proportions, and that, upon proof of death, it paid one half of the amount due by reason of the certificate to Alberta Rainey and tendered the other half to Carrie Price. It denied liability to Carrie except for one-half of the amount. The trial court rendered judgment in favor of Carrie for the full amount. This judgment was reformed so as to restrict recovery to one-half, and, as reformed, was affirmed by the honorable Court of Civil Appeals, Sixth District. 274 S. W. 1019.

Writ of error was allowed upon the petition of Carrie Price averring conflict between the decision of the Court of Civil Appeals in this case and that of other Courts of Civil Appeals in the cases of Flowers v. Sovereign Camp, W. O. W., 40 Tex. Civ. App. 593, 90 S. W. 526, Wooden v. Wooden (Tex. Civ. App.) 116 S. W. 627, and Anderson v. Grand Lodge, U. B. of F. (Tex. Civ. App.) 248 S. W. 461.

The constitution of the Sovereign Camp, Woodmen of the World, which in the Flowers Case was held to be a part of the contract as *relating to change of beneficiaries, provided,* amongst other things, that, in the event the certificate "is lost or the possession thereof is for any reason withheld from the member desiring such change of beneficiary," the "member shall furnish the Sovereign Clerk satisfactory proof under oath of the facts of the loss," etc., waive "for himself and beneficiary or beneficiaries all rights thereunder," and pay 25 cents, all "before the change shall be made." If, upon examination, the "proof" thus furnished be satisfactory to the Sovereign Clerk, it then became his duty to "issue to said member a new certificate in lieu of the old one with the desired change of beneficiary." On March 26, 1904, the "member" executed an affidavit purporting to show loss of his certificate, requesting issuance of substitute certificate with changed designation of beneficiaries. The paper, however, did not contain a waiver as to the original beneficiary.

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

It was delivered to the clerk of the local lodge at Fort Worth, with request that he forward it to the Soverign Clerk at Omaha, Neb. It was forwarded and was received by the Sovereign Clerk April 1, 1904. The "member" died before the paper reached the Sovereign Clerk. There was a provision in the constitution, dealing with the method of changing beneficiaries in case the certificate was not "lost" or "withheld" from possession of the "member"; and, in such a case, it was provided that the "member" might change the beneficiary by "forwarding" to the Sovereign Clerk the certificate with a request for change indorsed thereon and inclosure of 25 cents; "upon receipt thereof," it was provided, the "Sovereign Clerk shall issue and return a new certificate naming the new beneficiaries." The Court of Civil Appeals, Second District, held that no change of beneficiaries was effected by Flowers (the "member") because he had not complied with the constitutional requirement that satisfactory proof of loss of the original certificate be actually furnished to the Soverign Clerk, etc., before death matured and vested rights in the original beneficiary. Emphasis was placed upon the fact that a mere forwarding of purported evidence, etc., was not a compliance, since the requirement was that the proof be "furnished" so as that it could be examined and determined to be "satisfactory" all before the condition warranting a change would arise. It was held, also, that the paper executed by Flowers had a fatal defect, in that it did not contain the waiver as against the original beneficiary.

The Locomotive Engineers' Insurance Association, a fraternal benefit society, had by-laws "which became a part of the insurance contract," wherein change of beneficiaries was authorized upon surrender of the original certificate to the "home office" with written request stating names of new beneficiaries. The "member" had a certificate of aggregate benefits of $4,500, payable (to the extent of $3,000) to his wife and (to the extent of $750 each) to his two sons. One of the sons died, and thereafter the member wrote a letter to the other in which he said, "You know that I have my life insured for $1,500 in your favor." Subsequently, the "member" died without having made any "effort * * * to change the beneficiary * * * in accordance with the foregoing provisions of the by-laws." Upon the statement in the letter referred to, the surviving son claimed the right to participate in the aggregate benefits to the extent of $1,500, and this claim was rejected in Wooden v. Wooden, supra.

The Grand Lodge, United Brothers of Friendship, had by-laws providing what classes of persons would be eligible to be named as beneficiaries in its certificates. These classes were the same as those named in article 4832, Vernon's Sayles' Ann. Civ. St. 1914.

It also had by-laws providing, in great detail, how a change in beneficiaries might be made where the "member's" wife was named as the beneficiary in the original certificate. In such a case, change was permitted only when certain facts existed; i. e., (a) when the husband was separated from the wife, but there was no divorce; (b) where the wife abandoned the husband or failed to minister "to the husband and family." If the requisite fact existed, and the original certificate was lost "or withheld from the husband," he might procure a new certificate naming others (within the specified classes) as beneficiaries by filing with the Grand Secretary affidavit showing loss, etc., of the old certificate with request for issuance of a substitute. In the event the original certificate was not lost or "withheld," it had to be surrendered (with an indorsed request for change) and affidavit of the "member" and of two "credible witnesses" showing the fact of separation or of abandonment, etc. In the latter case, the Grand Secretary had to be satisfied with the proof thus furnished before the new certificate could issue. J. R. Bell was a "member," and his certificate named his wife as beneficiary. This certificate was locked in his safe, and was not withheld from him at any time. He was not separated from his wife, and she had not abandoned him or failed to "minister" to him or the family. He executed and furnished to the Grand Secretary affidavit of loss of the original certificate, but he did not furnish any proof of separation from, or abandonment by, his wife. He requested issuance of, and there was issued, a new certificate naming "J. B. Bell's estate" as the beneficiary. The beneficiary thus named was not within the classes specified in the by-laws or in article 4832, Vernon's Sayles' Ann. Civ. St. 1914. In Anderson v. Grand Lodge, U. B. of F., supra, it was held that "this attempt of Bell to change his beneficiary * * * was ineffectual and did not cancel the first certificate."

It will be noted that (according to the constitution or by-laws) in each of the cases referred to the matter of changing the beneficiary was bilateral, as between the "member" and the society, that certain things which had to be done before the condition authorizing the change could arise were definitely prescribed. None of the prescribed things were done before the event of death by the "members" whose acts were before the courts in the cases firstly and secondly mentioned; this is true also of the acts considered in the case thirdly mentioned, and, in addition, what was attempted was in direct violation of the by-laws and the statute. It was under such conditions that the courts applied the general doctrine that, when the rules of an order prescribe the method of changing beneficiaries, the change cannot be effected in a different way.

[1] But, in the present instance none of

the conditions which influenced the decision in either of the other cases exist. In our opinion, with a restriction to be noted, the case falls within the doctrine of Splawn v. Chew, 60 Tex. 532; that is to say "the clear import" of the relevant certificate and constitutional provisions "is to place the certificate entirely under control of the member, so far as the selection of its beneficiaries is concerned," subject to a single condition. The certificate itself declares that the order "may change the beneficiaries named * * * at any time on application." This language, in literal import, means that the things which are manually essential to evidence the change may be done by the order after death as well as they may be done before death (for they may be done "at any time"), provided, only, that the order have before it, at the time of the change, an "application." There is no expressed or implied requirement that the member be alive at the time that manual change is made. And, when the certificate provision is read with the relevant constitutional provision, it is clear, we think, that what the order is to do in the event of receiving an "application" is purely manual and formal. It has no choice; it must obey the "application."

[2, 3] This is so because the absolute right to affect a change of beneficiary is given the member by the constitution. The relevant language is that "Any member may change the beneficiary * * * by making sworn application therefor." There is here, or in the context, no time limitation fixed for the exercise of the right. Nor is there any provision for acceptance, or not, or other use of discretion, by the order. If the member "makes sworn application therefor," and thereby declares his intent, which is the important thing (Splawn v. Chew, supra), the change follows as a matter of course. This right, which is his, belongs to the member, and may be claimed by him up to the moment of death, provided, of course, his mentality is such as to enable the direction. To hold otherwise is to dispute the language used by the parties and make it say that "any member shall not change the beneficiary by making sworn application therefor unless the application, as made, shall be delivered to the order prior to his death," and this would be to resolve all doubts and ambiguities against the "member," whereas we think a liberal interpretation in his favor should be given in case of doubt. The word "make" or the word "making" may not be synonymous with "promulgate" or "promulgation," and its meaning may not include the idea of "delivery" of the thing "made." In relation to papers, very often it means "to form and compose" (State v. Drew, 51 Vt. 56, 58) or to write and sign (United States v. L. & N. Ry. Co. [D. C.] 165 F. 936,

939). If Ann Burns had merely written and signed the "application," she would have, in one sense at least, "made" it. But she did more; her language is such as to indicate her intent that the paper be finally delivered to the order, and her act in "promulgating" it by intrusting it to her attorney must be taken as one in furtherance of that purpose. And, in our opinion, what she did, and caused to be done, and what the order did in recognition of her acts and rights, was, in all substantial respects, in conformity with the rules by which those acts and rights are governable.

There is, we believe, no conflict between the decision of the honorable Court of Civil Appeals in this case and that in either of the cases cited.

Accordingly, we recommend affirmance of the judgment of the Court of Civil Appeals.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.