### FRANCES V. KOTCH v. JOE KOTCH

No. A-3674. Decided October 1, 1952.
Rehearing overruled October 29, 1952.
(251 S. W., 2d Series, 520.)

*P. F. Graves, Jr.,* of Houston, for petitioner.

The Court of Civil Appeals erred in holding that the decedent did all that he could do in order to name a new beneficiary. Garabrant v. Burns, 130 Texas 513, 111 S.W. 2d 1100; Tips v. Franklin Life Ins. Co., 144 Texas 461, 191 S.W. 2d 470; Wright v. Wright, 44 S.W. 2d 1019, error refused.

*Peter P. Cheswick,* of Houston, for respondent.

cited: Brown v. Union Central Life Ins. Co., 72 S.W. 2d 661.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The action under review may be taken as one of interpleader by Metropolitan Life Insurance Company, insurer in a group life insurance policy covering employees of the Texas and New Orleans Railroad Company and in particular Bruno Adam Kotch, a retired brakeman of advanced age, who died from cancer of the throat on December 27th, 1948, holding a certificate for $1200 under the policy. This sum, which the insurer, describing itself as disinterested, duly paid into court, is the subject of conflicting claims of the other two parties to the suit, Mrs. Frances Kotch, widow of the insured and beneficiary named in

the certificate, and Joe Kotch, a middle-aged son by an earlier marriage. The dispute as between these two parties is the sole matter in litigation and turns on whether certain conduct of the insured shortly before his death effectively substituted Joe Kotch as beneficiary in lieu of Frances. The trial court, without a jury and on fact findings hereinafter mentioned, gave judgment for Mrs. Kotch, the Court of Civil Appeals reversing this action and entering judgment for Joe Kotch. 247 S.W. 2d 587.

The relevant policy provision reads as follows:

"Any Employee insured hereunder may, from time to time, change the Beneficiary by filing written notice thereof with the Employer accompanied by the Certificate and Certificate Riders —if any—of such Employee. Such change shall take effect upon endorsement thereof by the Employer on such Certificate and Certificate Riders—if any—and unless the Certificate and all Certificate Riders,—if any—are so endorsed, the change shall not take effect. After such endorsement, the change shall relate back and take effect as of the date the Employee signed said written notice of change, whether or not the Employee be living at the time of such endorsement, but without prejudice to the Company on account of any payment made by it before receipt of such written notice."

As hereinafter more fully discussed, the certificate naming petitioner, Mrs. Kotch, as beneficiary was never delivered up for endorsement, nor was any recognition made of respondent Joe Kotch, as a beneficiary by either the railroad company or the insurer.

The other facts—undisputed, unless as indicated otherwise —are substantially as follows: The insured and petitioner were married in 1929 and lived together at their apartment in San Antonio until about two months before the death of the insured at Houston, where he had gone to live with the respondent. The illness of the insured, which began about a year previously, was critical during at least the latter part of his residence in San Antonio. At this time petitioner had been under some strain in looking after him, including earning money to supplement his retirement pay, and among herself, a half brother of the insured and respondent, it was decided that she should go to visit her relatives in Florida, and the insured should be taken to Houston. (The testimony of respondent is that petitioner "deserted" her stricken husband, and indeed, her later conduct indicates little devotion to him, but her version of the matter—

not altogether improbable—is that she left for a desperately needed rest at the suggestion of respondent himself and never intended to abandon the insured). The assured was taken to Houston by respondent in the automobile of the former and remained there in the care of respondent until his death on December 27th, while petitioner went by train to Florida and remained there until about December 7th, when she returned to San Antonio, where evidently their apartment was still maintained, and never saw the insured again. About three years before his removal to Houston, the insured, who had several times previously made beneficiary changes regarding his certificate, thereby progressively increasing the fraction thereof payable to petitioner, made a final one, designating her as sole beneficiary, and then delivered the certificate to her. Thenceforward she kept it in a trunk at the apartment, along with the title papers to his automobile and other business papers and personal belongings of each spouse, both of them having access to the trunk at all times, and both trunk and contents (except as below stated) remaining at the apartment at all times until after the death of the insured. In the latter part of November, 1948, petitioner received in Florida a special delivery letter written from Houston by the insured stating that respondent, Joe Kotch, who was caring for him, was in need of funds, that the insured wished to give respondent the automobile and requesting that petitioner write at once to the landlady of the San Antonio apartment to send the trunk to the insured so that he might have the automobile title papers. Petitioner did not write the landlady, but, as stated, did return to San Antonio about ten days later and, apparently soon thereafter, got the title papers out of the trunk and sent them— keeping the trunk (and the insurance certificate) in her possession. There were sundry other letters written to petitioner by the insured, and also by respondent, before December 27th, but none of them said anything that might be construed as a request for, or even a reference to, the certificate, nor did the insured or anyone on his behalf make any other attempt to get possession of either the trunk or the certificate; (while the letter requesting the trunk may, in the light of later matters belowmentioned, have been intended to result in procuring the certificate, the express mention of the title papers as the sole reason for wanting the trunk is clearly at variance with such an assumption). The only evidence as to knowledge of the insured at relevant times of the whereabouts of the certificate is the proof introduced by respondent that the insured had turned it over to its accessibility to him, as well as the strong proof that he be- petitioner, her testimony of the use made of the trunk and of

lieved it to contain the automobile title papers not long before he died. In the same connection, the pleadings of the respondent are pitched on the theory, not that the insured was ignorant of the whereabouts of the certificate or thought it lost, but that petitioner had refused to surrender it.

Some three weeks after his letter to petitioner about the automobile papers, that is, about December 13th, 1948, the insured duly executed two appropriate form documents bearing that date, one being for change of the beneficiary in favor of respondent and the other for issuance of a duplicate certificate on the ground that the existing one had been lost. These forms were procured from the railroad company and are admitted by petitioner to have been returned to it promptly after their execution, though there is no proof as to whether they ever reached the insurer. As before stated, no responsive action was ever taken one way or another by the railroad company or the insurer, although some two weeks elapsed between the admitted filing date and the death of the insured.

There was testimony for the respondent that the petitioner had told the insured in the early part of December that she did not want him at home with her and that the insured had expressed a desire to have a divorce from her, although petitioner denied that there were any serious marital difficulties between them, and the content of the letters to her from the insured rather bears out her version of the matter.

The principal fact findings were, that (a) the insured delivered the certificate to petitioner some years before his death; (b) it remained "in the possession of" petitioner at all relevant times thereafter; (c) its redelivery to insured was never demanded by him or refused by petitioner; (d) petitioner never abandoned the insured or was permanently separated from him. The judge refused respondent's requests to find that the insured evidenced a clear intent to make the beneficiary change in question, that he applied for a duplicate certificate because the existing one "was not then available to him" and that the insured "did all he reasonably could to bring about" the change of beneficiary.

The theory of the trial judgment clearly was that, by reason of the facts reflected in findings (a), (b) and (c) above, the insured fell short of doing all he reasonably could do to effect the change of beneficiary or of, what was said to be the same thing in Tips v. Security Life & Acc. Co. and (Tips v. Franklin Life Ins. Co.), 144 Texas 461, 191 S. W. 2d 470, complying sub-

stantially with the pertinent policy requirements. The opposing thesis of the Court of Civil Appeals states, that the beneficiary named in an unmatured policy or certificate has no vested interest, that the above quoted policy provisions are purely for the benefit of the insurer and thus waiveable by the latter, and that there was substantial compliance in view of the lack of proof that the insured knew the "exact location" of the certificate plus his undoubted request for the trunk.

**1** In our opinion the divergence between the trial court and Court of Civil Appeals is with regard to the judgment that should follow from the facts rather than what the facts themselves are. Neither court should have had, or apparently did have, any doubt from the evidence, that there was both a failure of the insured to demand the certificate from petitioner to whom he had entrusted it and an absence of anything approaching a refusal by the petitioner to surrender it. The Court of Civil Appeals evidently held as a matter of law that the insured had "done all he could reasonably have done" despite absence of both demand and refusal, and, had it considered a demand or its equivalent necessary to effect the change of beneficiary, would have affirmed the trial court. The reference in the opinion to the request for the trunk cannot be taken as disagreement with the fact findings of the trial court regarding demand, because the opinion also contains the pointed suggestion that the insured did not know the certificate was in the trunk. Our own conclusion is that this absence of a demand or its equivalent is fatal to the respondent's case.

The statements of law in the opinion as to the purpose of the quoted policy requirements and waiver thereof by the insurer are somewhat ambiguous under the circumstances, though perhaps intended merely as part of a conventional statement of the "substantial compliance" rule last applied by us in the Tips cases, supra. Indeed, since this type of controversy was apparently first considered by us in Splawn v. Chew, 60 Texas 532, and no doubt because of what was said in that case on the subject of waiver by the insurer, the purpose and effect of policy restrictions on changes of beneficiary are still not entirely clear in their application to disputes purely between rival claimants to the proceeds. Garabrant v. Burns, 130 Texas 518, 526, 111 S. W. 2d 1100, 1104, it was said—" * * that there was no proper —* * application for change of beneficiary, and therefore no question of waiver could arise," when the very point raised was that the application was proper because its defects had been waived by the insurer. And Richardson v. Faithful, Tex. Civ. App., 298

S. W. 1054. (no writ of error hist.) cited in the opinion of the court below and seemingly holding that the restrictions may be invoked only by the insurer, has yet to be expressly overruled, even if it was sought to be distinguished in Wright v. Wright, Tex. Civ. App., 44 S. W. 2d 1019, er. refused. That other jurisdictions are also less than clear on the point appears from the elaborate annotation and comment in 19 A.L.R., 2nd 5. However, Wright v. Wright and, more importantly, Garabrant v. Burns (both of which are apparently approved in the Tips cases, supra) undoubtedly do hold in effect that the restrictions are also for the benefit of the last beneficiary named as such in the certificate or policy itself as against a party claiming that such designation was changed in his favor, while from this premise they proceed to the rule that, as between such opposing claimants, and even though the insurer takes no position on the restrictions, the purported change will be given effect only if the insured has "substantially complied" with them, or "done all he reasonably could have done" in that behalf. As suggested in the last section of the abovementioned annotation (19 A.L.R. 2nd 5, 129) a more conservative approach might have been to treat the policy requirements as purely for the protection of the insurer (on the strength of statements in Splawn v. Chew) and thus in cases like the present to make the test largely one of intent of the assured. Such an approach would have entailed more readily acceptance of purported changes than our actual rule of "all he could reasonably have done" seems to permit. But there is also merit in our existing view, which, while disclaiming to recognize a "vested" right in the named beneficiary and while not denying that the policy provisions may be waived by the insurer, yet regards the matter as one of contract between insurer and insured for the benefit of a third party—the named beneficiary—and apparently represents a policy to forestall belated, informal treatment of these serious economic affairs, which is generally suspicious in appearance and nearly always confusing and litigious in result. In any event, Richardson v. Faithful, supra, cannot now be considered a correct statement of the law, and the applicability of Splawn v. Chew, supra, to change of beneficiary disputes under modern insurance contracts is obviously quite limited.

The abovementioned judicial policy consideration, which evidently underlies Garabrant v. Burns, militates against a very

liberal interpretation of "substantial compliance." In Johnson v. Johnson, (5 Cir.) 139 F. 2d 930, 151 A.L.R. 268 cited with apparent approval in the Tips cases, the insurance contract provided for notification of the insurer through the employer, the change to take effect upon acknowledgment of it by the insurer. The insured caused a proper notice to be delivered to the employer but died before it reached the insurer, and it was held that the change was not effected. In Wright v. Wright, supra, the policy requirements were a written application to the insurer accompanied by the policy, the change to be effective only when endorsed on the policy by the insurer. The insured was estranged from the named beneficiary, who was his wife, and delivered the policy to his attorney, with instructions to do everything necessary to substitute his mother as beneficiary, including the signing on his behalf of all appropriate documents. The attorney promptly advised the insurer of his client's purpose and received in reply an application form which he then decided to have his client execute personally, the client being killed a day or two later before the attorney had contacted him again. The attempted change was held ineffectual. In the Tips cases, as well as in Kelley v. McDonald, Tex. Civ. App., 83 S. W. 2d 414, er. dism., cited in the former, the requisite application was executed and attached to the policy or policies, but the change was held ineffective because these documents were never forwarded, the policy requirements being substantially the same as in Wright v. Wright. On the other hand, attempted changes were held effective in Price v. Supreme Home, Tex. Com. App., 285 S. W. 310, Adams v. Adams, Tex. Civ. App., 78 S. W. 2d 664, er. dism., and Wyatt v. Wyatt, Tex. Civ. App., 63 S. W. 2d 268, er. dism., cited in the opinion below. In the first two, which seem contrary to Johnson v. Johnson, supra, but have not been overruled, the signed application and policy were mailed to the insurer prior to death of the insured but received thereafter. In Wyatt v. Wyatt, the insured did nothing toward making the change, except to state orally his intent in this behalf and to ask the named beneficiary to return the policy which was in her possession, the result resting on her fraudulent misrepresentations as to its whereabouts, which evidently caused the insured to take no further action before his death.

2, 3 In the instant case, the insured complied with the policy terms, except that the certificate was not surrendered for endorsement. Had he procured it and tendered it to the railroad company along with his application, the final step of endorsement by the insurer would not have been necessary, because,

under the Price and Adams cases, supra, he would have done all that he reasonably needed to do. In determining generally what he should "reasonably" do, we have no Texas precedent on the relative importance of this particular requirement of returning the certificate. Garabrant v. Burns attached much significance to the requirement that the application be witnessed in a certain manner. The Tips, Wright and Kelley cases insist on at least some act of delivery to the specified authority, though the absence thereof in those cases existed with respect to both the application and the certificate or policy. But, while obviously the delivery of the application alone, as in the instant suit, makes a better case for the change than if neither the application nor policy were delivered, we consider that delivery (or its equivalent) of both is, generally speaking, essential. Nor do we regard the request for a new certificate as the equivalent of returning the certificate or "all he could do" in that direction, although such delivered request, plus the application for the change, makes a better case for the change than if only the application were delivered. The insured having himself entrusted the certificate to petitioner, logically he should have asked her to return it, as he could easily have done, and just as he successfully did regarding the automobile title papers. His rather conspicuous failure to take this simple step, coupled with the absence of evidence to support his statement to the railroad company that the certificate was lost, create just the sort of confusing situation which Garabrant v. Burns evidently had in mind to forestall. 130 Texas 518, 523, 111 S. W. 2d 1100, 1103. This conclusion finds support in the relatively recent decision of Henderson v. Adams, 308 Mass. 333, 32 N. E. 2d 295, holding that a demand on the beneficiary to whom the insured had entrusted the certificate was essential in the absence of proof that such a demand would have been disregarded. Additional decisions from other jurisdictions are cited as in accord with the Massachusetts rule in the abovementioned annotation (19 A.L.R. 2d 5, sec. 33). The same note does, indeed, also disclose substantial authority to the contrary. However, we consider the former to be more consistent with the policy of our own decisions heretofore reviewed.

The judgment of the Court of Civil Appeals is accordingly reversed and that of the trial court in favor of petitioner, Frances Kotch, is affirmed.

Opinion delivered October 1, 1952.

Rehearing overruled October 29, 1952.