Emmett **ELLINGTON** et al., Appellants,

v.

**METROPOLITAN LIFE INSURANCE COMPANY**, Appellee.

No. 14905.

United States Court of Appeals
Fifth Circuit.

Dec. 14, 1954.

Wallace C. Franklin, Jr., Dallas, Tex., R. Matt Dawson, Corsicana, Tex., H. L. Williford, Fairfield, Tex., Dawson & Dawson, Corsicana, Tex., for appellant.

Hawkins Golden, Dallas, Tex., Wallace C. Franklin, Jr., Dallas, Tex., and H. L. Williford, Fairfield, Tex., for appellee Emily Arlene Ellington.

Before BORAH, RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

Metropolitan Life Insurance Company filed its bill of interpleader, paying into court the sum of $10,505.64, the proceeds of its group insurance certificate on the life of Clyde A. Ellington, now deceased, and seeking to determine whether Emmett Ellington, Cecil C. Ellington and

Mrs. Pattie Rea Layfield, the appellants, or Mrs. Emily Arlene Ellington, who will hereafter be referred to as if she were the sole appellee, are entitled to all or any part of such proceeds. Appellants are the children of Clyde A. Ellington by his first wife, and appellee, his second wife, is the widow.

■ Diversity of citizenship exists between the plaintiff, Metropolitan Life Insurance Company, and all of the defendant claimants to the fund, and the amount being in excess of $3,000.00, exclusive of interest and costs, the district court had jurisdiction under 28 U.S.C.A. § 1332,[1] even though the rival claimants or some of them on each side are citizens of the same state. John Hancock Mutual Life Ins. Co. v. Kraft, 2 Cir., 200 F.2d 952.

The appellee was the beneficiary under said certificate, and the appellants are seeking to recover one-half of its proceeds, contending that the insured had made a change of beneficiary by virtue of which one-half of the proceeds of such certificate was to be paid to the appellants and one-half of such proceeds was to be paid to the appellee.

The case was tried by the court without a jury. Judgment for the entire proceeds of the certificate was entered for the appellee, from which judgment this appeal is prosecuted.

Clyde Ellington was an employee of Magnolia Pipe Line Company and as such was insured under a group policy with Metropolitan. His certificate contained the following provision relative to a change of beneficiary:

"Section 15. Change of Beneficiary.

"The employee may, from time to time, change the beneficiary by filing written notice thereof with a duly authorized representative of the insurance company, accompanied by this certificate. Such change shall take effect upon indorsement there-of by the insurance company on this certificate, and, unless the certificate is so indorsed, change shall not take effect. After such indorsement the change will relate back to and take effect as of the date the employee signed said written notice of change, whether the employee be living at the time of such indorsement or not, but without prejudice to the insurance company on account of any payment made by it before receipt of such written notice."

The master contract between the insurance company and Magnolia contained essentially the same provisions.

The facts regarding a previous change of beneficiary on the certificate are stipulated by the parties. The certificate was originally issued November 13, 1939; the beneficiary originally named was Patty Rea Ellington, the daughter of insured; on October 10, 1948, the beneficiary was changed from Patty Rea Ellington, daughter, to Emily Arlene Ellington, his wife, by the said Clyde Ellington; Emily Arlene Ellington and Clyde Ellington were married in 1940 and continued to live together as husband and wife until the death of Clyde Ellington on October 6, 1952; when Clyde Ellington made his wife the beneficiary, he went through the procedure prescribed in the certificate for effecting such a change, that is, he properly executed the written notice thereof on the form G–20, prepared by Metropolitan Life Insurance Company for that purpose, and submitted such properly executed form, along with the certificate of insurance, whereupon the change of beneficiary was endorsed on the certificate.

During the last three years of his life, Clyde Ellington was in a precarious state of health, undergoing a series of operations, and during his last year his condition was considered by his physician as quite serious. On September 21, 1952, he entered a hospital in Fort Worth for a final operation. In the words of his

[1] As distinguished from 28 U.S.C.A. § 1335 under which the adverse claimants must be of diverse citizenship.

physician, "It was something that had to be done or he wasn't going to be alive very long. He was fully aware of the critical nature of his illness and the possibility and probability that he may not survive." On the same day, he wrote his immediate superior, Mr. C. E. Still, a District Superintendent of Magnolia Pipe Line Company, the following letter:

"9/21/52 Ft. Worth Texas
Mr. C E Still.

"Dear Mr. Still. In 1950 while in hospitle up here I had 3 policies, and they were 1 maid to my Daughter one maid to my to sons the other to my wife. But in order to get a little help, I maid them all to my wife. Well I maid a will in April explaining why they were changed. But have found out since coming up here she can collect for all and have youse of my half of Place as long as she lives. And of cours I love my wife, and like anyone else I love my children to, and would like to leave them a little something to rember me By if Something should happen to me while trying to win this fight. My Baby will bring policies up there, and you can tell her where she will have to go to get it changed. I want half of it maid to my 3 children
    "Emmett Ellington
    "Cecil C Ellington
    "Patie Rea Layfield.

"Paid as they wanted it paid. the other half to my wife paid 100 a month if it can be arranged that way Will be operated on 8 A.M. tomorrow. My wife will have to other policies. and the youse of our Place as long as she lives so thanks a lot for what you can do. As ever
            "Clyde Ellington"

Mr. Still's work required that he be out "on the line" much of his time, and he did not know of the letter until the morning of October 6, 1952, when he returned to his office after many days absence and found the letter in his mail box on his desk. This was about 7:30 A.M. He immediately sent the letter by messenger to the office of Mr. Pierce Murray, head of the Insurance and Annuity Section of Magnolia, and it was stamped by his secretary "P.M." (signifying the initials of Pierce Murray) "Received, Oct. 6, 1952". Later during the same day, it was learned that Clyde Ellington had died, and the letter, which was in the office at the time, was then called to the attention of Mr. Murray.

The insured died at 10 A.M., October 6, 1952. Whether the letter reached Mr. Murray's office before or after his death is not clear, but we believe that the fair inference from the evidence is that Mr. Still had sent it to Mr. Murray's office earlier in the morning, but that it was not called to Mr. Murray's attention until after the death of the insured.

█ The widely accepted rule is that a strict or complete compliance with the provisions of an insurance policy regarding a change of beneficiary is not necessary, a substantial compliance being sufficient. See the extensive annotation in 19 A.L.R.2nd. 5, 14, et seq.; 29 Am.Jur., Insurance, Sec. 1320. The Texas courts are in accord with that rule, and some of the cases indicate that a substantial compliance should be recognized when the insured clearly expresses his desire to change the beneficiary, puts in motion the required procedure, and then does everything reasonably possible to perfect the change. Adams v. Adams, Tex.Civ. App., 78 S.W.2d 664, 665; Wyatt v. Wyatt, Tex.Civ.App., 63 S.W.2d 268, 269, second appeal Tex.Civ.App., 104 S.W.2d 887; Price v. Supreme Home, Tex.Com. App., 285 S.W. 310, 312. The latest decisions on the subject from the Texas Supreme Court that have reached our attention are Tips v. Security Life & Accident Co., 144 Tex. 461, 191 S.W.2d 470, and Kotch v. Kotch, 151 Tex. 471, 251 S. W.2d 520.

In the Tips case, the Texas Supreme Court stated that [144 Tex. 461, 191 S. W.2d 471]

"* * * a change is not accomplished unless the insured has substantially complied with the method designated, or to use the language of Adams v. Adams, Tex.Civ.App., 78 S.W.2d 664, unless he has done all

that he could reasonably have done to perfect a change." 191 S.W.2d 470, 471.

It does not seem so clear to us that the test of substantial compliance is always the same as the test of all that the insured could reasonably have done, but that question need not be decided in this case, and, when necessary, can be authoritatively settled by the state courts. In the Kotch case, nearly all Texas cases in point are reviewed, or cited, including the decision of this Court in Johnson v. Johnson, 5 Cir., 139 F.2d 930, 151 A.L.R. 268, and the Texas Supreme Court states its "existing view" as follows:

"while disclaiming to recognize a 'vested' right in the named beneficiary and while not denying that the policy provisions may be waived by the insurer, yet regards the matter as one of contract between insurer and insured for the benefit of a third party—the named beneficiary—and apparently represents a policy to forestall belated, informal treatment of these serious economic affairs, which is generally suspicious in appearance and nearly always confusing and litigious in result." 251 S. W.2d at page 523.

In that case, the policy provision for change of beneficiary had the same legal effect as that in the present case. The facts were that the insured, while in the last stages of cancer, made a request for a change of beneficiary, but failed to deliver the certificate of insurance for indorsement. The insured had three years previously made his wife sole beneficiary and delivered the certificate to her. Thenceforth she kept it in her trunk in their apartment in San Antonio, along with the title papers to their automobile and other personal papers. A few weeks prior to his death, she went to Florida and he to Houston. While she was in Florida, the insured wrote her asking that she send the trunk keys to the apartment landlady so that the landlady could get the automobile papers and forward them to the insured. The wife did not do this but returned to San Antonio in early December and personally sent the title papers. The insured never at any time requested nor demanded delivery of the insurance certificate which was in her possession. Two weeks before his death, the insured duly executed two appropriate forms, one for change of the beneficiary in favor of his son by an earlier marriage and the other for issuance of a duplicate certificate on the ground that the existing one had been lost, and promptly returned these executed forms to his employer. No responsive action one way or another was taken by the employer or the insurer during the two weeks that intervened before the death of the insured.

The Court held that,

"Had he procured it (the certificate) and tendered it to the railroad company along with his application, the final step of endorsement by the insurer would not have been necessary, because, under the Price and Adams cases, supra, he would have done all that he reasonably needed to do. * * * But, while obviously the delivery of the application alone, as in the instant suit, makes a better case for the change than if neither the application nor policy were delivered, we consider that delivery (or its equivalent) of both is, generally speaking, essential. * * * The insured having himself entrusted the certificate to petitioner, logically he should have asked her to return it, as he could easily have done, and just as he successfully did regarding the automobile title papers. His rather conspicuous failure to take this simple step, coupled with the absence of evidence to support his statement to the railroad company that the certificate was lost, create just the sort of confusing situation which Garabrant v. Burns evidently had in mind to forestall. 130 Tex. 518, 523, 111 S.W.2d 1100, 1103." Kotch v. Kotch, supra, 251 S.W.2d at pages 524–525.

The appellants undertake to differentiate this case from the Kotch case as follows:

"In the instant case the certificate was not 'entrusted to the Appellee'— it was not in the possession of Appellee, but was in the insured's lock box at Teague, Texas. Hence, there is no factual basis for the requirement that a demand be made upon another person having possession. On the day the insured went to the hospital in Fort Worth for the operation the next morning, the certificate was inaccessible to him, both by reason of the fact that it was Sunday and also the distance involved, as well as his serious illness. This was the day he wrote the request for change of beneficiary. Thereafter, he was in such a critical state that he could not get the policy from the lock box in Teague and forward it in. His efforts to get the daughter to procure the certificate were frustrated, due to her feeling that he was too sick for him to deal with such matters. The evidence is silent as to any other attempts he may have made, but in view of his precarious condition, we submit that his failure to forward the certificate is justifiable even absent any showing of his efforts with respect thereto."

█ The evidence showed that the appellee also had a key to this safety deposit box, but, though she was with the insured constantly during his last illness, remaining with him except when necessary to go out for her meals, there is no evidence that he ever asked her for possession of the certificate, or requested that she do anything to bring about a change of beneficiary. From the time of his operation on September 22 to the time of his death on October 6, with the exception of one day, October 1, the insured was entirely rational, able to make any decision, had a telephone by his bedside, and was capable of communicating any request to any relative or friend. Instead, according to appellants, he relied entirely upon his daughter to procure the certificate. Her failure to do so out of consideration for her father's extreme illness is understandable, and probably commendable. The fact remains, however, that she was the agency chosen by the insured to carry out this mission, and that, on her failure, the insured did not do all that he reasonably could have done, and did not substantially comply with the requirements of the certificate.

The insured had had previous experience in changing the beneficiary, and his letter leaves no doubt that he remembered the necessity of producing the certificate. That requirement, though within his power, was not performed. Essentially, we think that the present case is ruled by the decision in the Kotch case. The judgment is therefore

Affirmed.