The MERCANTILE NATIONAL BANK AT DALLAS, Independent Executor of the Estate of Martha Ann Baxter, Deceased, Appellant,

v.

The FRANKLIN LIFE INSURANCE COMPANY and Nolia Elizabeth Teer, Appellees.

No. 16529.

United States Court of Appeals
Fifth Circuit.

Sept. 5, 1957.

Wm. H. Clark, III, Ramsey Clark and Clark, Coon, Holt & Reed, Attys. at Law, Dallas, Tex., for appellant.

John A. Rawlins and Stanley E. Neely, Dallas, Tex., for appellee.

Before RIVES and CAMERON, Circuit Judges, and BENJAMIN C. DAWKINS, Sr., District Judge.

CAMERON, Circuit Judge.

This appeal presents the question whether the insured in a Single Premium Cash Refund Insurance Policy effectively elected, during her lifetime, to surrender the policy for its cash value so that, upon her death, said value was payable by the insurer to her estate rather than to the contingent beneficiary named in the policy. Interpleaded by the insurer, The Franklin Life Insurance Company, appellant, The Mercantile National Bank at Dallas, Independent Executor of the Estate of Martha Ann Baxter, Deceased, filed its claim on the ground that the insured had validly exercised the option given by the policy to receive the cash surrender value; while appellee, Nolia Elizabeth Teer, based her claim[1] on the assertion that insured's efforts to exercise this option were abortive inasmuch as she did not comply with the policy requirement that such a request be made in writing. The court below granted the motion for summary judgment filed by Mrs. Teer, hereinafter called beneficiary, and this appeal by the bank, called executor, followed.

The Company issued the policy in question December 2, 1953, when the insured paid it $5,600.00 in cash to be repaid to her at the rate of $30.56 per month. Nolia E. Teer was named contingent beneficiary with the right to receive, upon insured's death, the unpaid balance due under the contract. The insured was given the right by the insurance contract to surrender it and collect the balance due at any time.[2]

The facts before us reveal that insured telephoned the Dallas office of the Company July 18, 1955 stating that she wanted to cash the policy under the quoted option, and that she confirmed the request by a personal visit to the office on the same day. At the moment she was unable to find the policy so the agent had her execute the usual lost policy affidavit and also had her sign a general release of all rights existing under the policy.[3]

Between the above date and July 25, 1955 insured delivered to the agent at Dallas the policy which had been found, and the agent sent both the release and the policy to the home office, where they were received on or prior to July 27th. On that date the company mailed to its agent a check payable to insured for the amount due under the cash surrender option. With the check the company forwarded an additional release not appearing in the record, with instructions that the check be delivered to insured upon its execution. The agent endeavored to deliver the check, but found that he could not see the insured because she had

1. The beneficiary asserted an alternative claim that the insured's efforts to collect the cash surrender value were induced by the fraud and duress of her grandson and should be declared ineffectual,—a claim not dealt with by the court below nor reached by us.

2. "F. Cash Surrender Value: Upon the Annuitant's written request and legal surrender of this Contract at the end of any contract year before the sum of the annuity payments made equals the single premium received by the Company under this Contract, the Company will pay a cash surrender value as follows: * * *."

3. " * * * the undersigned Mrs. Martha Ann Baxter for and in consideration of ————————Dollars in hand paid by The Franklin Life Insurance Company, the receipt whereof is hereby acknowledged, does for himself, his heirs, executors and administrators, accept the said consideration in full compromise, settlement and satisfaction of all claims and demands of every nature, character and description, and all causes of action either in law or equity arising or growing out of Policy ` * * * of insurance No. 1219026 issued * * * by The Franklin Life Insurance Company on the life of Martha Ann Baxter, * * * and does hereby forever release and discharge said * * * Company, * * * of any and all liability thereunder and does hereby surrender and relinquish any right, title, or interest in said Policy * * * and any and all supplemental agreements thereto attached. * * * "

suffered a severe heart attack sometime between July 25th and July 29th, from which she died August 5th.[4]

■ Based upon these facts, the court below granted the beneficiary's motion for summary judgment, reciting in its order that it had "considered all the pleadings, motions and affidavits on file * * *." There were no affidavits on file, except that the attorneys for the rival claimants appended their own affidavits to some of the pleadings. In no instance did such affidavits show that the facts were based upon the affiants' knowledge; or that they otherwise complied with the requirements of Rule 56(e) F. R.Civ.P., 28 U.S.C.A. In fact, it is obvious that the attorneys did not have any personal knowledge of the facts and that they were not competent to testify to them. Such affidavits have no probative value on a motion for summary judgment. 6 Moore's Federal Practice, 2d Ed., pp. 2325 and 2330.[5] It was proper for the court below to pass on the motion as one for summary judgment, but it was, under the circumstances, "functionally the same as a motion to dismiss or a motion for judgment on the pleadings." [6]

■ We think it was error for the court below to grant the motion for summary judgment. The insured had a perfect right to surrender her policy and collect the cash surrender value without consultation with or action by the beneficiary; and what she did, as above shown, was adequate to accomplish that purpose. She made known to the Company her desire to collect the cash, executed a full and general release, and surrendered the policy. These actions on her part brought about an absolute obligation on the part of the Company to pay her what she was entitled to receive under the option. In the absence of any applicable case from a Texas Court, we follow the general rule which was thus stated by the Supreme Court of Mississippi[7] when it was dealing with facts quite similar to those involved here in a contest between the executor and the beneficiary:

"When the insured elected to exercise the option [to surrender the policy and collect the cash value] by an unqualified notification to the company to that effect, the obligation of the company became thereupon a matured indebtedness to the insured for the amount of the cash surrender value, and any contingent liability thereby came to an end. The company would have no right or option or privilege to reject the unconditional notification of the exercise by the insured of his right to accept the cash surrender value, and when so notified in unqualified terms the obligation of the company to pay the cash surrender value became then and there a fixed and perfected obligation,—a matured debt with all other obligations merged into it. The authorities seem to be uniform in so holding.[8]

4. The foregoing statement of facts is taken from the pleadings and presents them in the light most favorable to the contentions of the Executor.

5. The expedient of verifying pleadings does not invest them with any added weight or importance, Rule 11 F.R.C.P. and 2 Moore's Federal Practice, 2d Ed., pp. 2107 et seq., except in instances where the Rules specifically provide for verification, e. g., Rules 23(b), 27(a) and (b), and 65; and cf. 28 U.S.C.A. § 41 (26) and § 381, now 28 U.S.C.A. §§ 1335, 1397, 2361 and Fed.Rules Civ. Proc. rule 65.

6. 6 Moore's Federal Practice, p. 2015, and authorities cited.

7. Mutual Life Insurance Co. v. Kaiser, 1942, 193 Miss. 581, 10 So.2d 766.

8. This holding is supported by a long line of cases cited by the Mississippi Court. Included in them is Fidelity Mutual Life Ins. Co. v. Merchants & Mechanics' Bank, 71 F.2d 777, decided by this Court.

There, a bank assignee of a policy, had made demand upon the insurance company for payment of the cash surrender value, but had not delivered the policy to it at the time the insured died. That situation was covered by this language of our opinion (at page 778) : "The right of the bank as assignee to surrender the policy * * * for cash measured by

"*  *  * The present suit is by the beneficiary as if the policy was in existence as a life insurance policy at the date of the death of the insured, when in fact it had been converted into a debt to the insured, which debt is now one due to his estate."

The policy before us contained, besides the option set forth in footnote , 2 supra, provisions giving the insured the absolute right to make an assignment or change the beneficiary. It is obvious that these rights could be exercised by the performance of such acts as were satisfactory to the insurer and the insured. As above shown, the notice of election and request for payment by the insured were absolute and unequivocal and were followed by an unconditional physical surrender of the policy. The verbal notices given to the Company's agent (and manifestly communicated by him to the Company) and the policy had been accepted by the home office prior to the insured's death. The Company had no alternative but to pay, and that obligation was matured and absolute at the time of insured's death.

This conclusion is not in contravention of the cases relied on by the beneficiary.[9] Each of those cases presented a contest between beneficiaries based upon rival contentions as to whether policy provisions governing change of beneficiaries had been complied with. Johnson involved a group life insurance policy which required that a notation of beneficiary change should be entered on the policy. The insured had written a letter to his employer, the Pullman Company, requesting change of beneficiary, but this was not communicated to the insurance company until thirteen days after his death and after the rights of the named beneficiaries had become vested. We held that the Pullman Company was the agent of the insured and that the attempted change was ineffective because the agent did not notify the company so that the change could be noted on the policy before the insured's death.[10]

Ellington also involved a group policy, and the insured attempted to change beneficiaries by writing a note to his superior officer in Magnolia Pipe Line Company, his employer. The daughter to whom he gave the letter did not deliver it to the employer until the day of insured's death. The insurance certificate required notice to the insurance company and notation of change of beneficiary to be made on the insurance certificate. We held that the agent chosen by insured to see that the notice reached the proper officials did not perform this important function during the lifetime of the insured, and further that the certificate was not produced so that the fact of

---

its surrender value was an absolute option dependent only on the bank's will and act, and not requiring any consent on the part of the insurance company. The quoted provision of the policy was a continuing offer on the company's part kept open for a sufficient consideration and requiring only the acceptance of the bank by its making the election to take the cash surrender value. The effect of such election would be to change the liability of the company from one to pay the face of the policy according to its conditions on the death of the insured into a present absolute liability to pay the lesser surrender value. * * * the decisions are that an unequivocal request for cancellation which reaches the company or some one authorized to represent it is generally sufficient without a physical delivery up of the policy."

9. E. g., Ellington v. Metropolitan Life Insurance Co., 5 Cir., 1954, 217 F.2d 609, 611; Johnson v. Johnson, 5 Cir., 1943, 139 F.2d 930, 934, 151 A.L.R. 268; Tips v. Security Life & Accident Co., 1945, 144 Tex. 461, 191 S.W.2d 470; Kotch v. Kotch, 1952, 151 Tex. 471, 251 S.W.2d 520; and Creighton v. Barnes, 1953, 152 Tex. 309, 257 S.W.2d 101.

10. We stated (139 F.2d at page 934), however, "We recognize it to be well settled that * * * if the facts and circumstances were such as to show that the Insurance Company before the death of the insured waived strict compliance with the requirements in the policy, equity will treat the change as having been made under the maxim that 'equity will treat as having been done that which should have been done.' "

change of beneficiary could be noted on it as required in the insurance certificate, and we therefore affirmed the action of the trial court in refusing to recognize the attempted change of beneficiary.[11]

In Ellington, we considered many of the Texas cases upon which the beneficiary here relies, including Kotch, and we do not repeat here our discussion of them there set out. It is clear that in Kotch, the Texas Court, also construing a group insurance policy, held merely that the steps taken by the insured did not constitute "substantial compliance" with policy provisions concerning change of beneficiary.

The contest here is not between two rival beneficiaries, but between the personal representative of the insured and a beneficiary whose interest was admittedly a contingent one which came into being only if the insured failed to take, during her lifetime, the steps necessary to mature the obligation of the insurer to pay the cash surrender value. Even if the cases involving contests between beneficiaries should be considered applicable, they would not be decisive under the facts before us.

Here, the Company, dealing with a live insured, accepted her verbal notice to the local agent and her surrender of the policy as sufficient to mature its obligation to pay the cash surrender value. It issued its check and instructed that it be delivered, not when a written request for cancellation should be executed,—the sole deficiency asserted by the beneficiary,—but upon the signing of another receipt and release.[12] The important and decisive fact is that the insurer, dealing with

its insured under the policy terms,[13] had recognized the steps taken as sufficient and had itself done all that it reasonably could do to pay the cash surrender value.

We hold, therefore, that the pleadings show the presence, rather than the absence, of material issues of fact.[14] For the trial of these issues on their merits the order granting the motion for summary judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

11. In that opinion (217 F.2d at page 611) we stated: "The widely accepted rule is that a strict or complete compliance with the provisions of an insurance policy regarding a change of beneficiary is not necessary, a substantial compliance being sufficient. * * * The Texas courts are in accord with that rule * * *."
    And cf. Shack v. United States, 5 Cir., 1956, 234 F.2d 934.

12. The requirement of the second release was merely a part of the mechanics of

completing the payment of the cash surrender value and was, therefore, of no controlling significance; moreover, the release which had already been signed was as general in its terms as it could be made and the execution of a further release would have been mere useless duplication.

13. Cf. Continental Casualty Co. v. Robertson, 5 Cir., 1957, 245 F.2d 604.

14. The pleadings are not models of brevity or consistency. The bank filed three

separate pleadings and the beneficiary four, including a motion to strike all or parts of the bank's pleadings. It seems likely that if the same energy had been expended by counsel in utilizing the exploratory procedures contained in the Rules, the case would long since have been robbed of all of its mystery, the facts upon which the respective parties intend to rely would have been in the possession of counsel and available to the court, and the real issues would have been narrowed and defined.