Mrs. H.L. NICHOLS, Appellant,

v.

Betty Marlene NICHOLS, Appellee.

No. 09–86–109 CV.

Court of Appeals of Texas, Beaumont.

Feb. 19, 1987.

Rehearing Denied March 11, 1987.

E.W. Newman, Law Office of E.W. Newman, David Burrow, Burrow & Williams, Houston, for appellant.

Rae Leifeste, Hall & Lane, San Angelo, for appellee.

## OPINION ON MOTION FOR REHEARING

BURGESS, Justice.

The opinion delivered by this court on January 8, 1987, is withdrawn and this opinion substituted.

This appeal is from a directed verdict awarding the proceeds of a life insurance policy to the insured's former wife rather than his mother. Mr. Nichols, the insured (Nichols), died in an auto accident on December 21, 1982. Both his former wife, Betty Nichols (wife), and his mother, Mrs. H.L. Nichols (mother), claimed the policy

benefits. The insurer, National Old Line Insurance Company (Old Line), filed an interpleader action. After Old Line's dismissal, the matter was tried between Nichols' mother as plaintiff and his former wife as defendant. The trial court denied both parties' motions for summary judgment but granted a directed verdict against the mother.[1] She appealed after denial of her motion for judgment notwithstanding the verdict.

The evidence showed that Nichols and his former wife married in 1963 and purchased the policy at issue in 1964. She was the endorsed beneficiary on the policy from 1964 through the insured's death. They divorced on May 18, 1977. He had written Old Line when they separated some twenty months earlier requesting that it change the beneficiary on the policy from his wife to "Mrs. H.L. Nichols." Old Line wrote back requesting additional identifying information for the new beneficiary and a disclaimer signed by his wife. He called Old Line to protest the company's "interference in his personal business." Old Line agreed to effect the change upon his returning forms necessary under the policy.

That policy provided, in pertinent part, for a change of beneficiary "by written notice satisfactory to the Company ..." retroactively effective on the date of the written notice "upon receipt of such notice at the Home Office of the Company, together with the policy for endorsement...."

The divorce decree divested his wife of "all right, title, and interest in and to ... (the) cash surrender value of Life Insurance Policy in the amount of $5,387.40." It also named her managing conservator of the couple's three then minor children. The mother and two of Nichols' brothers testified that he clearly expressed his intent to substitute his mother as beneficiary and thought he had accomplished this by writing and telephoning Old Line. Appellant alleges eight grounds of error.

---

1. Although appellant maintains that the directed verdict came at the end of her case, the court actually entertained the motion at the close of all the evidence.

■ She first challenges the denial of her motion for summary judgment. This court can not consider an appeal based on that denial because the trial court denied both parties' summary judgment motions. *Wright v. Wright*, 154 Tex. 138, 274 S.W.2d 670 (1955); *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396 (1958). Appellant's first point of error is overruled.

■ She next alleges that the divorce decree extinguished the wife's interest in the life insurance proceeds and relies upon *McDonald v. McDonald*, 632 S.W.2d 636 (Tex.Civ.App.—Dallas 1982, writ ref'd n.r.e.) and *Beckham v. Beckham*, 672 S.W.2d 41 (Tex.App.—Houston [14th Dist.] 1984, no writ) to sustain her position. That reliance is misplaced. A divorce decree must specifically divest a spouse of their contingent beneficial interest in a life insurance policy to effectively terminate that interest. *Parker v. Parker*, 683 S.W.2d 889 (Tex.App.—Fort Worth 1985, writ ref'd). As recited above, this decree awarded Mr. Nichols the cash surrender value of the policy but said nothing about the wife's beneficial interest. It falls far short of divesting the wife of her interest. We further note that agreeing with appellant would not necessarily establish her beneficial interest in the policy; Nichols' estate would be due the proceeds unless he otherwise effectively substituted his mother as beneficiary. We now turn to the issues concerning that purported substitution.

Appellant argues three no evidence points and their counterparts concerning the directed verdict: (1) there is no evidence that the wife was the intended beneficiary on the policy; Nichols' intent is an issue for the jury; (2) there is no evidence the wife is the named beneficiary because Nichols complied with the notice requirements in the policy; a fact question concerning that compliance precludes the directed verdict; (3) the mother is the named beneficiary because Nichols substantially complied with the notice requirements as a matter of law; Nichols' substantial compliance is a jury issue.

■ Where a directed verdict is allegedly in error, this court must review the evidence in the light most favorable to appellant and disregard all contrary inferences and evidence in doing so. *Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480 (Tex.1980); *Beaumont Ready-Mix, Inc. v. Maddoux*, 708 S.W.2d 581 (Tex.App.—Beaumont 1986, no writ). Appellant construes this rule to mean that we must disregard all evidence introduced by appellee that "does not support in any way (her) evidence." Assuming this is so, we conclude that the directed verdict should stand.

■ In order for an insured to change beneficiaries on a life insurance policy he must comply or substantially comply with policy provisions governing such a change. *Creighton v. Barnes*, 152 Tex. 30, 257 S.W.2d 101 (1953). Substantial compliance requires that an insured do all that reasonably can be done to effect the change. *Kotch v. Kotch*, 151 Tex. 471, 251 S.W.2d 520 (1952). The Old Line policy required company receipt of satisfactory notice as well as the policy for endorsement to change beneficiaries. Appellant failed in her burden of proof regarding these requirements.

Appellant's evidence consisted of a copy of the insurance policy that required the insured to provide the insurer both adequate notice and the policy for endorsement in order to change beneficiaries; appellee was the named beneficiary on the policy in evidence. Testimony further revealed that Nichols was capable of handling his business affairs until his sudden, unexpected death. Thus, he was capable of complying with these policy requirements. She also introduced a copy of the letter Nichols wrote instructing Old Line to change beneficiaries. Finally, she introduced Old Line's memorandum of a follow-up telephone conversation in which Nichols complained of Old Line's insistence on more information to make the change. That memorandum concluded that Old Line would "make the change if [Nichols will] return the forms...."

Appellant introduced no evidence that Nichols returned the forms or sent his policy for endorsement; strict compliance was lacking. She also failed to introduce evidence raising a fact question concerning Nichols' substantial compliance with the policy terms. Her failure to prove that he forwarded the policy to Old Line for endorsement was, by itself, fatal to her case. In *Kotch, supra,* the Texas Supreme Court refused to find substantial compliance when the insured did not forward his policy for endorsement as required. That exact failure defeated a claim for policy proceeds in *Creighton, supra.*

Appellant claims that Nichols' attempt to change beneficiaries in his initial letter to Old Line precludes the conclusion that he failed to substantially comply with the policy provisions as a matter of law. She distinguishes *Creighton, supra,* by virtue of the absence of any such attempt on the part of the insured in that case. That difference does not detract from the Court's holding that in order to substantially comply with the policy it was necessary "to make a request for ... a change, *and* deliver the policies to the company for its endorsement of the change on the policies." *Creighton, supra,* 257 S.W.2d at 104. (Emphasis added.) Furthermore, in *Kotch, supra,* the insured had requested a change and failed only in the requirement that he deliver his insurance certificate to his employer for endorsement. The court stated:

> In determining generally what he should "reasonably" do, we have no Texas precedent on the relative importance of the particular requirement of returning the certificate.... [W]hile obviously the delivery of the application alone, as in the instant suit, makes a better case for the change than if neither the application or the policy were delivered, we consider that delivery (or its equivalent) of both is, generally speaking, essential.

*Kotch, supra* 251 S.W.2d at 524.

Appellant's substantial compliance claim also fails on her proof concerning Nichols' failure to forward forms to Old Line as required by the policy. The telephone memorandum she introduced showed that Old Line expected more than Nichols' initial letter and follow-up phone call to effect the requested change. Although we are prohibited from considering contradictory evidence favorable to the movant upon reviewing a directed verdict, we may consider uncontradicted evidence favorable to the movant. *Watts v. St. Mary's Hall, Inc.,* 662 S.W.2d 55 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.) This holds true whether the movant or non-movant introduces that uncontroverted evidence. *Gutierrez v. Uribe,* 104 S.W.2d 569, 571 (Tex. Civ.App.—Fort Worth 1937, no writ). Based on appellant's evidence and all favorable inferences from it, reasonable men could not differ that she failed to show that her son substantially complied with the policy provisions regarding the change of beneficiary.

Appellant claims that evidence of Nichols' intent to substitute her as beneficiary overcomes his disregard of the policy requirements. We disagree. Intent, is, in almost all cases, irrelevant to the inquiry of whether an insured has complied or substantially complied with policy provisions governing a change of beneficiary. This is true even when the parties have been divorced unless the decree separately evidences intent by specifically divesting spouse of their contingent beneficial interest. *Lewis v. Lewis,* 693 S.W.2d 672 (Tex. App.—San Antonio 1985, no writ); *Parker, supra.*

Appellant distinguishes *Parker, supra,* by noting that the insured in that case never attempted to change the beneficiary on policy between his divorce and death even though his insurance agent warned him several times that his ex-wife remained the beneficiary. In this case, Nichols' "attempt" came several years before the divorce decree. Moreover, *Parker*'s suggestion that an attempt to change the policy might have amounted to substantial compliance must be read in light of its note that the deceased's insurance policy was not admitted into evidence. Had it been admitted and required delivery of the policy for endorsement to effectuate a beneficiary change, then both *Kotch, supra,* and

*Creighton, supra,* would foreclose characterizing an attempt to change the policy as one amounting to substantial compliance.

■ We refuse to follow *McDonald, supra* and *Beckham, supra* to the extent that they would, absent extraordinary circumstances, allow evidence of intent to determine the beneficiary on a policy that has not been changed after a divorce. Both of those cases involve extraordinary circumstances. In *McDonald,* the insured died twenty-five days after an acrimonious divorce without deleting his former wife as the beneficiary; the insured in *Beckham* died 35 days after divorce and was seriously ill during that short period. Nichols, by contrast, had over five years between divorce and death to change his policy and did not; the limited exception to the substantial compliance rule whittled out by those cases does not apply to this case.

For the foregoing reasons, appellant's points of error numbers three through eight are overruled and the trial court's decision affirmed. Appellee asks us to award a ten percent penalty under *TEX.R. APP.P. 84* for the prosecution of this appeal. We do not agree that a penalty is merited because appellant relied upon cases that establish her good faith, reasonable belief that an appeal would result in reversal.

AFFIRMED.